McFarland, J.,
delivered the opinion of the Court.
On or about the 21st of July, 1859, at a sale of real estate in Clarksville by R. W. Humphreys, G. B. Fleece became the purchaser of two lots, and for each lot executed four several notes, due severally in six, twelve, eighteen, and twenty-four months, payable to the order of R. W. Humphreys, and said Hum-phreys executed and delivered a title bond, binding himself to convey the property to said Fleece upon the payment of the notes. Within a few days after the date of the notes, T. W. King, as agent of T. W. Atkinson, purchased the notes from said R. W. Hum-phreys, who endorsed them in blank and delivered them to said King, and on the 11th of August, 1859, King deposited the notes in the Branch Bank of Tennessee at Clarksville, for collection. The two notes falling due first were paid by said G. B. Fleece. The *275 other six notes not being paid were duly protested and notice given to the endorser. In the month of January, 1862, Atkinson, the owner of the notes, died, and about the 16th or 17th of February, 1862, the assets of said Branch Bank of Tennessee were removed by its officers from Clarksville, first to Nashville, then to Memphis, afterwards to Chattanooga, and finally to Griffin, in the State of Georgia. These notes were taken south with the other assets of the bank. On or about the 25th of January, 1864, Fleece paid to the cashier of said bank at Griffin, Georgia, the amount of said notes iú Confederate treasury notes, amounting at the time to about $6,644.98, and the notes were thereupon surrendered to him, and afterwards, about the 22d of February, 1866, said Humphreys conveyed the property to Fleece.
There was no personal representative of the estate of Atkinson until the year 1865, when his will was proven, and the complainant King qualified as executor, and on the 8th of April, 1867, this bill was filed charging that the payment of the Confederate money did not discharge the maker and endorser, and that the lien upon the real estate retained by Hum-phreys was transfered with the notes to Atkinson, and that the complainant had the right to have this lien enforced, notwithstanding the deed had been made by Humphreys. The question is, have the notes been paid?
It admits of no doubt that if Confederate Treasury notes were received by the owner of a - note or other obligation voluntarily in payment thereof, this would *276 be a good payment and discharge the obligor. On the other hand, it is equally well settled that if payment be made to an agent of the holder, in the absence of special authority, either expressly given or fairly to be implied, the agent will not be authorized to bind his principal by the receipt of Confederate money, and if he assume to receive the same in payment of the debt, the obligor will not be discharged. Scruggs v. Lester, 1 Heis., 151; 4 Hum., 444; 6 Hum., 62.
It may also be regarded as well settled that in general an agency, or power to act for and in the name of another, is revoked by the death of the principal, except in a class of cases of powers coupled with an interest, when the power may be executed after the death of the principal. Story on Agency, 488, 489.
We do not think it necessary to undertake to draw the correct distinction between those cases when the authority will be regarded as absolutely revoked by the death of the principal, and cases when the acts of the agent after the death of the principal, but in .ignorance of the fact, will be binding upon his estate. In the view we take of this case, a decision of this question, and a review of the authorities to which we have been referred upon the subject, are not necessary.
It is laid down as a general rule that a presentment by any person in possession of a bill bona fide, is sufficient to charge the parties to the bill.
The production alone of a bill of exchange or note *277 endorsed in blank, is in general sufficient authority to warrant a payment to the bearer, for the possession is presumptive evidence of ownership, or at least of agency. 2 Parsons on Notes & Bills, p. 209, note d, and authorities there cited.
When a negotiable note or bill has been. endorsed to a bank for collection, the bank may maintain an action in its own name, and in such case a payment to the bank would of course be good. The delivery of the note endorsed in blank passes the test to the paper. 2 Head, 597; 1 Swan, 425.
• It has been held, says Parsons in his work on Notes & Bills, p. 210, that when a bill or note has been endorsed to an agent merely to receive payment, and this is known to the payor, such agency is revoked by the death of the principal, and if that be known to the payor, and he make payment to the endorsee it will not discharge his liability. From this the argument seems natural, that if the payor did not know that the bank only held the paper as an agent for collection, and was also ignorant of the fact of the principal’s death the payment would be good.
It may be conceded for the argument that the delivery of this note endorsed in blank, conveyed to the bank, if it chose so to act, a right to maintain an action in its own name thereon, and that if Fleece was ignorant of the fact that the bank was not the owner, and ignorant that the owner was dead, in that event a payment made by Fleece to the bank would be good, unless there were circumstances to put him *278 upon inquiry, and show that the payment was made at his own risk.
Still the question in this case is, not whether Fleece had a right to trust the bank as the agent of the owner, but did he have the right to trust the bank as the owner of'the paper. For, as we have seen, a payment of this character made to the owner, and voluntarily received is good; but payment of this character made to an agent in the absence of the principal, and without special authority to receive such payment, is not good; the law will not presume authority to receive Confederate money. See Scruggs v. Lester, 1 Heis., 151, and other authorities.
The question is, did Fleece have the right in this payment to trust the bank as the owner of these notes, or at most could he only claim that the bank was authorized to act as the agent of the owner. For notwithstanding the fact that the delivery of the note to the bank endorsed in blank passed the legal title, still, in fact, the bank only held the note as agent of the owner. And, admitting for the argument, that the death of the owner did not revoke the agency, yet if the evidence charges Fleece with notice of the character in which the bank held this paper at the time he paid it, the payment not having been such as an agent could lawfully receive in the absence of express authority, will not be good.
It is clearly proven that very soon after the purchase of the notes, to-wit: on the 11th of August, 1859, they were deposited in the bank for collection. No charge was to be made by the bank for collec *279 tion, and they claimed no right to the notes. Fleece paid the two notes first falling due, and paid them at the bank.
Fleece in his answer denies that he had any knowledge that the notes were owned by Atkinson, or that Atkinson was dead, and denies that he ever knew there was such a man as Atkinson. He does not, however, aver that he believed the bank to be the owner of the notes at the time he took them up, but says, “ he knew nothing of any one’s connection therewith but Humphreys and King; he heard somehow that King owned the notes, and so thought and still thinks he owned them at the time they were paid off by respondent.”
He does not say in his answer that the bank was the owner of ■ the notes, or that he believed the bank to be the owner; but avers that he paid the notes to the bank as the agent of the complainant.
His deposition, when closely scrutinized, bears the same meaning. He says: “At the time of the payment to the Bank of Tennessee, nothing was said to me with regard to the ownership of said notes. I regarded them as the property of the bank.” By this he must have meant that he treated them as belonging to the bank, for he proceeds: “Before the war I had some information to the effect that T. "W. King owned said notes; the ownership or control thereof by Atkinson I knew nothing of.” If his answer and deposition be not thus reconciled, he will still be held bound by the statements of his answer.
It is in proof by the complainant King, that he *280 purchased the notes from Humphreys as the agent of Atkinson, that he deposited them in the bank for collection in the name of Atkinson, and that they were so entered upon its collection books.
This fact is also distinctly proven by Wilcox, the cashier of the bank at the time.
King further proves with great distinctness, that he had an interview with Fleece before the first notes were paid, in which Fleece desired to know if further indulgence could be had in the event it should be desired, and that in this connection he distinctly informed Fleece that he was only the agent, and that Atkinson was the owner of the notes, and this by fair construction refers to all the notes. Fleece admits this interview, but does not remember the latter part of the conversation. As King swears very positively to that part, it must be regarded as proven, and the evidence of Fleece upon this point must be taken as merely negative, and reconciled upon the supposition that the conversation was upon his part forgotten. The oath of Fleece to his answer being waived, the fact is sufficiently proven by one witness. The circumstances under which Fleece paid the notes are shown by himself. He says: I was residing at Macon, Georgia. While there I wrote to Fisher inquiring if the bank had for collection any notes on the M. C. & L. E. K., having in view the payment of the same as agent of said company. Fisher replied that the bank had none of these notes, but did hold for collection certain notes on me; then upon this notice, I went to Griffin and paid and took up said notes. He further *281 says that nothing was said to him at this time with regard to the ownership of these notes, and that he asked no questions in regard thereto. Upon these facts, can it be said that Fleece had the right to treat the bank as the owner of the notes?
It is a familiar and sound principle, that where one of two innocent persons must suffer from the act of the third, he who enabled such third person to occasion the loss, must, sustain it; but can Fleece be entitled to the benefit of that principle here? As we have seen, he had positive notice that these notes were owned by Atkinson after they were in possession of the bank. And he must be held chargeable with this notice, although it seems the fact afterwards escaped his memory. Again, when he made the payment, he admits in his answer that he did not think the bank owned the notes, but that he thought they were owned by King. It does not appear that the bank claimed to be the owner at the time, or that it demanded the payment. Fleece made no inquiry upon this subject, although the books of the bank would have then and there shown that the notes were deposited in the name of Atkinson for collection; and this fact, if not then known to him, could have been easily ascertained upon inquiry and examination of the books. Whether or not the officer to whom these notes were paid knew of Atkinson’s death does not appear, although it does appear that the cashier of the bank at Clarksville knew of his death before the bank was removed. Upon these facts, we can not say that Fleece can charge the loss which he may have sustained by the payment of this *282 Confederate money to the act of Atkinson, or King his agent, by placing them in the hands of the bank with a blank endorsement, and without placing within his reach the necessary information as to who was the true owner.
Conceding in his favor, for the argument, that the bank held the notes with the right to sue upon them, and that the agency was not revoked by the death of Atkinson or by the war, still we think it clear that the bank was but the agent of the owners; and of this fact the evidence and circumstances charge Fleece with notice; and this being so, the payment in Confederate money was not valid.
The conveyance of the property by Humphreys, although it passed the legal title, does not deprive the complainant of his lien. As there seems to be no intervening right, this consequence is not material. The result is, the decree of the Chancellor will be affirmed.
Note.-The ease is different where the money was received by a sheriff or the clerk of a court. See Turner v. Collier, 4 Heis., 99-101; also, Douglas v. Neil, post.