SOLOMON H. KOHN, *et al.*, *Partners, &c.*, v. J. B. WATKINS.

1. BILL OF EXCHANGE, *Payable to Real Person; Indorsement; Recovery.* Where a draft or bill of exchange is made payable to a real person, known at the time to exist, and present to the mind of the drawer when he makes it, as the party to whose order it is to be paid, such draft or bill must bear the genuine indorsement of such payee in order that a *bona fide* holder may recover thereon, although the bill is drawn without the knowledge or consent of the payee through the false representations of a party obtaining it from the drawer by fraud.

2. BILL, *Payable to Fictitious Payee; Invalid Defense.* Where a drawer of a bill of exchange is induced by the false representations of a correspondent seeking to defraud him, to make a bill payable to a fictitious person — not knowing the payee to be fictitious when he makes the bill — and intending that such bill shall be payable to a real person, and thereafter transmits such bill to his correspondent with instructions to obtain a note and mortgage therefor from the payee therein named, and then to deliver over to such payee the bill, and the correspondent negotiates the bill to an innocent holder for value, and before dishonor, it will be no defense against such *bona fide* holder for the drawer to set up that he did not know the payee to be fictitious; and as such bill runs to a fictitious payee, it is as if drawn payable to bearer.

*Error from Douglas District Court.*

ACTION brought by *Solomon H. Kohn, Morris Kohn,* and *M. W. Levy,* partners as Kohn Brothers & Company, against *Watkins,* upon certain drafts, copies of which are as follows:

No. 6639.      OFFICE OF J. B. WATKINS & CO., ⎱
             LAWRENCE, KAS., April 20, 1880. ⎰
Pay to the order of Geo. W. Cobb, three hundred and fifty-five dollars.        J. B. WATKINS & CO.
$355.        To Merchants' Bank, Lawrence, Kansas.
   [Indorsements:] Pay to the order of R. G. McLain.
                       GEO. W. COBB.
                       R. G. McLAIN.

No. 6652.      OFFICE OF J. B. WATKINS & CO., ⎱
             LAWRENCE, KAS., April 21, 1880. ⎰
Pay to the order of Michael A. Becker, three hundred and fifty-five dollars.        J. B. WATKINS & CO.
$355.        To Merchants' Bank, Lawrence, Kas.
   [Indorsements:] Pay to the order of R. G. McLain.
                  MICHAEL A. BECKER.
                  R. G. McLAIN.

No. 6656.        OFFICE OF J. B. WATKINS & Co., ⎫
                LAWRENCE, KAS., April 21, 1880. ⎭
    Pay to the order of Henry Greer, four hundred and forty-
four dollars.                J. B. WATKINS & Co.
$444.            To Merchants' Bank, Lawrence, Kansas.
    [Indorsements:]  Pay to the order of R. G. McLain.
                                HENRY GREER.
                                R. G. McLAIN.

Plaintiffs alleged in their petition that they are the *bona
fide* holders and owners of said drafts; that they paid a val-
uable consideration therefor, and that they are wholly unpaid.
Trial at the April Term 1881, of the district court. A jury
was waived, and the court made the following findings of
fact:

"The plaintiffs are a banking firm, doing business at
Wichita, Kansas, and were doing such business during all
the times hereinafter mentioned.

"R. G. McLain was a real estate agent and solicitor of
loans for parties desiring to borrow money upon real-estate
security, doing business at Kingman, in the state of Kansas,
during all the times herein mentioned. He was well ac-
quainted with the the plaintiffs herein, and had done busi-
ness with them at their bank at Wichita, and amongst other
business had, prior to the transactions involved in this suit,
negotiated and transferred to them two drafts drawn by the
defendant upon the Merchants' bank, and indorsed by said
McLain, which drafts were paid by said bank on presen-
tation.

"The defendant is, and during said periods of time has been,
a resident of Lawrence, Douglas county, Kansas, and been en-
gaged in the business of a solicitor of loans upon farm prop-
erty.  His manner of transacting business has been through
two classes of correspondents, one of which furnished the
money and received the securities, which are through the other
class of correspondents procured in various parts of the state,
and composed of notes secured by mortgages upon the farm
property of persons who desire to borrow money; as for in-
stance: a person at Abilene, desiring to borrow money, applies
there to a loan solicitor, who examines his land, investigates
the title, certifies to its value and the character and pecuniary
responsibility of the applicant, and through the mail applies
to the defendant for the loan.  If the loan appears a desira-
ble one, the defendant prepares the mortgage, etc., making it

payable to some of his first-mentioned correspondents, and transmits the same to the correspondent in this state who has sent the application, accompanied with a draft payable to the order of the mortgagor, with instructions to deliver the draft to such mortgagor on his delivering the mortgage duly executed and acknowledged, with the fees for recording paid, and also delivering the note of the applicant for the amount so secured by the said mortgage.

"The correspondents of said Watkins furnishing applications for loans are paid by commissions allowed them by defendant upon the loans procured, which is sometimes included in the draft sent and obtained by the correspondent from the applicant for the loan, and sometimes paid by a separate draft to the correspondent. Watkins receives his pay from commissions taken from the money secured by the loan.

"On or about the 30th day of March, 1880, the said R. G. McLain transmitted to said defendant a fictitious application for a loan, purporting to be made by one Geo. W. Cobb, and asking for a loan of money upon premises therein described, situated in Kingman county, Kansas. The said fictitious application purported to be sworn to before said McLain (who was a notary public), and his notarial seal affixed thereto; and the facts and statements contained purported to be verified by two witnesses, also purported to be sworn to before said McLain. Said defendant accepted said application, believing it to be genuine, and in accordance with the practice before mentioned, transmitted to said McLain the unexecuted note and mortgage to secure a loan of $400, less commissions, together with the draft mentioned and described in plaintiffs' petition herein, for $355, said draft to be delivered to said applicant upon the execution of said blank note and mortgage, and thereupon to become the property of said pretended Geo. W. Cobb. No note or mortgage was ever executed by or in behalf of said Cobb; said R. G. McClain indorsed upon said draft the name of Geo. W. Cobb, and also his own name, and negotiated the same and received the money therefor from the plaintiffs in this action, at the time and place in their petition mentioned.

"At the same time with the aforesaid application of said pretended Cobb, said McLain forwarded to said defendant another fictitious application for a loan, purporting to be made and sworn to by one Henry Greer, and describing lands in Kingman county, and substantially in all respects like the application of said Cobb, but asking for a loan of $500, which

application was also accepted by defendant, and a blank note and mortgage, together with the draft set out in plaintiffs' third stated cause of action, were forwarded to said McLain, as in case of said Cobb; said McLain indorsed said draft with the name of said Greer, and with his own name, and negotiated the same and received the money thereon from plaintiffs, at the time and place mentioned in their petition. No such persons as Henry Greer or Geo. W. Cobb resided in Kingman county, or owned land therein as purported by the said applications, but that said applications were wholly false and fraudulent, and manufactured by the said McLain with the design and for the purpose of obtaining money thereon fraudulently.

"On March 30, 1880, said McLain transmitted to said Watkins, defendant, another fictitious application purporting to be made by Michael A. Becker, a former resident of said county of Kingman, but whose name was forged to said application by the said McLain; said application was in form substantially like the aforesaid applications of Greer and Cobb, and asked for a loan upon lands described in Kingman county, of $400; defendant accepted said application, believing it to be genuine, and undertook to loan upon the same the sum of $400, less commissions, and thereupon transmitted to said McLain a blank note and mortgage, together with the draft mentioned in plaintiffs' petition, and described in their second cause of action; said McLain forged the name of said Becker as an indorsement upon the said draft, indorsed thereon his own name, and thereupon negotiated the same and received from the plaintiffs the money thereon.

"Each and all of said drafts were received by the plaintiffs in the usual course of trade, and they paid full value therefor. Said drafts were duly presented for payment, and payment thereon refused, of which the defendant had proper notice. Prior to the presentation of said drafts for payment, defendant had discovered the fraud of said McLain and stopped payment of said drafts, and they were not paid by reason of defendant's order. McLain was not the agent of defendant in said transactions. Defendant was not negligent in making and sending said several drafts to said McLain for the several persons who, by said fictitious applications, had applied for loans."

Thereon the court rendered judgment for defendant for all costs. Plaintiffs excepted, and bring the case here.

*Sluss & Hatton*, for plaintiffs in error:

A number of authorities authorize a recovery in this case. (*Lane v. Krekle*, 22 Iowa, 399 ; *Forbes v. Espy*, 21 Ohio St. 474; 1 Daniel on Neg. Insts., §§ 139, 140.)

The facts show a strong equitable ground for plaintiffs' right to recover. The defendant placed it in McLain's power to deceive them. Under all the circumstances, the defendant should bear the loss. ( *Bank v. Rld. Co.*, 20 Kas. 619. See also 1 N. Y. 613.)

Any holder for value, without notice of the fictitious character of the payees, may recover on such drafts as upon bills payable to bearer. (22 Iowa, 399 ; 21 Ohio St. 483; 11 Ind. 103; 1 N. Y. 113; 40 N. H. 26; Daniel on Neg. Insts., §§ 138–140.)

*R. J. Borgholthaus, W. J. Patterson*, and *John Hutchings*, for defendant in error:

The defendant having drawn the drafts in good faith, believing the payees therein named to be real persons, and intending such drafts for their benefit solely, the fraudulent indorsement of the names of said payees by McLain, without defendant's knowledge or authority, are forgeries, and transferred no title to plaintiffs upon which they can recover. (1 Daniel on Neg. Insts., § 136; 2 Parsons on Bills and Notes, 585; Byles on Bills, 397; 21 Ohio St. 483.)

It will be conceded that, as a general rule, to make a bill of exchange drawn payable to order, negotiable, it must contain the indorsement of some *real person* therein named as payee, (Comp. Laws 1879, ch. 14, § 1,) and that without such indorsement it would not be transferable so as to cut off any equitable or legal defense which the drawer had against it at the time of the transfer.

The only exception to this rule is where the drawer purposely makes the bill payable to a fictitious person and it is negotiated, either by himself or with his consent, to a *bona fide* holder without knowledge of the fiction. (Edwards on

Bills, 2d ed. 119, 120, 121; Parsons on Bills, 50; Story on Bills, § 200; 1 Camp. 120, 180.)

It is not enough that the bill is drawn to a fictitious payee. The drawer must have knowledge at the time it is drawn that the payee *is* fictitious, and intend to have the bill put in circulation in that form, or a recovery cannot be had against him upon it. (Story on Bills, §§ 56, 200; Parsons on Bills, 32, and note *i.*)

The necessity of the drawer's knowledge of the fictitious character of the payee in order to authorize a recovery against him, is recognized by nearly all the authorities cited by plaintiffs' counsel.

The bill must have the indorsement of the fictitious payee's name upon it in the handwriting of the drawer, or must be negotiated by him to some party intended to be benefited thereby, before it can be treated as a bill payable to bearer and the drawer estopped from denying the fictitious character of the instrument and his liability thereon. (Bigelow on Estoppel, 442; Byles on Bills, 266, and note; 1 H. Bl. 586; 2 Neb. 29.)

The opinion of the court was delivered by

HORTON, C. J.: Upon the record of this case two different questions are presented for our decision. The first is, whether a draft or bill of exchange payable to a real person known at the time to exist, and present to the mind of the drawer when he made it, as the party to whose order it is to be paid, must bear the genuine indorsement of such payee in order that a *bona fide* indorsee may recover thereon, when such bill has been drawn without the knowledge or consent of the person named therein as payee, through the false representations of a party forging the indorsement, who obtains it from the drawer by fraud and without consideration? Second, if a drawer be induced by the fraudulent representations of a party seeking to defraud him, to make a draft or bill of exchange payable to a fictitious person, not knowing the payee to be fictitious when he makes the bill and intending that such bill

shall be payable to a real person, may the *bona fide* holder thereof recover on it against a drawer as upon a bill payable to a fictitious payee?

The first inquiry arises upon the findings of the trial court in relation to the bill payable to the order of Michael A. Becker. It appears that he was a former resident of King-man county, and therefore a person *in esse;* that his name was forged to an application transmitted to Watkins by R. G. McLain without the knowledge or consent of Becker, asking for a loan of money upon premises purporting to be situated in Kingman county. It further appears that the defendant accepted the application transmitted by McLain, believing it to be genuine, and undertook to loan thereon the sum of $400, less commissions, and sent McLain a blank note and mortgage together with the draft; that McLain forged the name of Becker upon the draft, indorsed thereon his own name, and negotiated the same, and received from the plaintiffs the money therefor. The plaintiffs received the draft in the usual course of trade, and paid full value. It is argued by counsel for plaintiffs, that as to this draft Becker is to be deemed a fictitious person, because he had no knowledge of the draft, and no interest or concern in it. We do not think the position sound. The statute prescribes that to make a bill of exchange drawn payable to order negotiable, it must contain the indorsement of the person therein named as the payee. (Comp. Laws 1879, ch. 14, §1.) And we suppose that counsel for defendant will concede, as a general rule, that the plaintiffs could not recover as the indorsees of the note without proving the indorsement of the payee. Now while the authorities hold that when the drawer or maker of a bill of exchange knows that the payee is a fictitious person at the time he makes the draft, that a *bona fide* holder may recover on it against him as upon a bill payable to bearer ; and, while some of the authorities hold that it will be no defense against a *bona fide* holder for the maker or drawer to set up that he did not know the payee to be fictitious, yet none of these

1. Bill of exchange, payable to real person; indorsement; recovery.

authorities sustain the doctrine that if the payee be a real person, and such person was present to the mind of the maker or drawer when he made the draft as the party to whose order it is to be paid, a recovery can be had thereon without the genuine indorsement of the payee upon the mere indorsement of the party who induced the drawer to make the bill by fraudulent representations. Nor can such bill be considered as one running to a fictitious payee, and as if drawn payable to bearer. If the principle contended for by counsel be adopted, it would be wholly immaterial whether the indorsement is genuine or not, so far as to give to the instrument the character of negotiable paper when the indorser himself is not actually sued. For it would always be open to the dilemma, if he is a party, it is a genuine indorsement; if he is not, he is a fictitious payee and no indorsement is necessary. (*Dana v. Underwood*, 19 Pick. 99; *Rogers v. Ware*, 2 Neb. 29.) In our opinion, the indorsement on the draft to Becker is a clear forgery, and the holders, however innocent, cannot recover from the drawer.

The second inquiry presents more difficulty. No such persons as Henry Greer or Geo. W. Cobb, the payees mentioned in two of the drafts, resided in Kingman county, or owned land as purported by the applications transmitted by McLain. These payees are fictitious. The finding upon this matter is, that these applications (for loans) are wholly false and fradulent, and were manufactured by McLain with the design and for the purpose of obtaining money thereon fraudulently. In the draft to Becker, a real person was inserted as payee at the instance of McLain; but in the drafts to Greer and Cobb, fictitious names were transmitted by McLain, and such names adopted by the drawer from the applications so received by him from McLain; and these drafts, therefore, are not payable to persons *in esse*. Although the defendant made the bills in ignorance of the fact that these parties named as payees had no existence, yet, taking all the circumstances of the transaction together, we think the drafts to Greer and Cobb are controlled

<div style="margin-left:2em"><small>2. Bill payable to fictitious payee; invalid defense.</small></div>

by the line of decisions respecting bills and notes made payable to fictitious payees. Daniel on Negotiable Instruments, § 139, says:

"In the case of a note payable to a fictitious person, it appears to be well settled that any *bona fide* holder may recover on it against the maker as upon a note payable to bearer. It will be no defense against such *bona fide* holder for the maker to set up that he did not know the payee to be fictitious. By making it payable to such person he avers his existence, and he is estopped, as against the holder ignorant of the contrary, to assert the fiction."

The authority to sustain the rule announced is, *Lane v. Krekle*, 22 Iowa, 399. This authority, so far as the actual points necessary to have been decided in that case, hardly goes so far as the text of the author, because the note in that action was made payable to bearer, and Dillon, J., remarks at the commencement of the opinion, "That this fact relieves the case of some difficulties that would arise were it payable to the person named, or order." Yet that learned judge, in the opinion, presents a strong argument in support of the proposition stated by Daniel. He says:

"Upon reason and principle we are clear that, if the plaintiff is a *bona fide* holder for value and without notice, the fact that the note is made payable to a fictitious person, is no defense. In such case, the defendant would be estopped, as against the plaintiff, from setting up the fact. It was the defendant who made the note. By making it payable, as he did, he affirmed the existence of such a person as the payee therein named; and he should not, against a person ignorant of that fact — one who may reasonably be presumed to have acted upon the faith of the fact thus represented — be allowed to assert the contrary. This principle of estoppel *in pais* has a very extended and just application in the law of bills and notes, the doctrines of which are designed to give credit and circulation to negotiable paper, and to that end throw its protection around the honest and fair holders thereof. In respect to such a holder, the maker is bound to know that the payee is a real person, or thereafter hold his peace."

In the case of *Phillips v. Im Thurn*, 114 Eng. C. L. 694, the defense was that the payee was a fictitious person, in

ignorance of which fact the drawer drew the bill. It was decided by the court that since the drawer would be estopped to set up the fact that the payee was a fictitious name, the like estoppel would apply to an acceptor for the honor of the bill. In *Forbes v. Espy*, 21 Ohio St. 474, the defendants drew upon their correspondents in New York city in favor of Cochran, Holmes & Co., and by them indorsed to Charles Clark (a fictitious name assumed by one William Mara), and in that name indorsed in blank. Forbes & King became the *bona fide* holders of the draft. It was presented, payment refused by previous directions of the defendants, protested, and due notice given to the defendants. Mr. Justice McIlvaine, speaking for the court, says that the defendants were estopped from denying plaintiffs' title. In Chalmers' late Digest of the Laws of Bills of Exchange, p. 144, the law is thus stated : "B., at the request of X., makes a note payable to C.'s order. C. is a fictitious person, but B. does not know this. X. indorses the note in C.'s name, and it is negotiated to D., a *bona fide* holder for value, without notice. D. can sue B. *Cooper v. Mayer* (1830), 10 B. &. C. 468 ; *Beeman v. Duck* (1843), 11 M. &. W. 251 ; *Schultz v. Astley* (1836), 2 Bing. (N. C.) 544."

Passing from these cases, and the authorities therein cited, to the reasons for these two drafts being held as payable to fictitious payees, we add, that of course if Watkins had not intended that such payees should become parties to the transaction, or, in other words, had knowledge of their non-existence, there could be no question as to error in the judgment of the court below. (1 Parsons on Bills, 32, 560, 591, 592, and notes; 2 Parsons on Bills, 40, 50; Story on Bills, §§ 56, 200; 4 E. D. Smith, 83.) Ought the defendant, who made the bills in ignorance of the fact that the persons named as payees are fictitious, and thus parted with them to a correspondent, be permitted to aver and prove this as against the innocent holders for value? Either plaintiffs or defendant must lose in this transaction. Watkins transmitted these drafts to his correspondent McLain, and McLain was thereby

enabled to fraudulently put them in circulation. If the payees had been known to defendant as fictitious, they could have been treated by McLain as well as the plaintiffs, as bills payable to bearer. Now when a drawer issues a bill to a fictitious payee, although ignorant of that fact at the time, and parts with the possession thereof, ought he in fairness and justice to be allowed to say that such bill is void? "Where one of two innocent parties must suffer from the wrongful or tortious acts of a third party, the law casts the burden or loss upon him by whose act, omission or negligence such third party was enabled to commit the wrong which occasions the loss." (*Bank v. Rld. Co.,* 20 Kas. 520.) While the finding is, that the defendant was not negligent in making and sending these drafts, and that McLain was not the agent of the defendant in these transactions, it fully appears from the other findings that the drafts were sent to McLain, and that only for the act and conduct of the defendant, induced by the wrongful acts of McLain, these bills would not have been issued and sent forth as commercial paper. To some extent, it must be conceded, defendant, by his conduct as to these bills, placed himself in the hands of his correspondent. For instance, if Greer and Cobb had been in existence, and McLain had passed over to them these drafts without taking back any note or mortgage, it will not be questioned that after Greer and Cobb had indorsed and negotiated them to innocent holders, the defendant could not set up the fraud of these parties as any defense. In this way, if such parties were insolvent, the defendant would have been also absolutely defrauded of his money. So we think that, having relied upon the applications received from McLain for the names of the payees in the drafts issued by him, and two of the payees being fictitious, and then having transmitted these drafts to McLain, and thus given him the opportunity to put them in circulation, the defendant is not now in a condition to claim that the drafts are void, and to set up as a defense that he did not know such payees to be fictitious. He acted upon the information derived from McLain; he is bound by

McLain's knowledge, and must be conclusively presumed, as against the innocent holders for value, to have known that these two drafts are payable to fictitious payees. He can no more set up the fraud of McLain as to these two drafts, than he can the fraud of Greer and Cobb, had there been such persons actually existing in Kingman county, and they had obtained these drafts from McLain without complying with the request of the drawer as to the execution of the notes and mortgages, and then indorsed and negotiated them to innocent holders.

Counsel for defendant refer to cases making the indorsement by McLain upon the bills at the time he delivered them to plaintiffs a forgery. Even if this be so, we do not think it prevents the recovery by plaintiffs, because the principle of estoppel *in pais* is to be applied to the defendant, and as between the plaintiffs and the defendant these drafts are to be treated as if drawn payable to bearer. The case will be remanded, with directions for the court below to render judgment upon the findings of fact for plaintiffs upon the drafts payable to Greer and Cobb, and judgment for the defendant upon the draft payable to Becker.

All the Justices concurring.