CHISM, CHURCHILL & CO. v. BANK.

(*Jackson.*  May 23, 1896.)

BILLS AND NOTES.  *Drawee bank's liability.*

A drawee bank which pays a draft, relying on a forged indorsement thereon of the name of a fictitious person to whom the payee indorsed it innocently, as the result of a fraud practiced upon him, is not thereby relieved from liability to the payee.

Cases cited and approved: 46 Ohio St., 512; 126 N. Y., 318; 114 Mass., 311.

FROM SHELBY.

Appeal from Second Chancery Court of Shelby County.  STERLING PIERSON, Ch.

SCRUGGS & HENDERSON, for Chism, Churchill & Co.

TURLEY & WRIGHT, for Bank.

BEARD, J.  The complainants are cotton factors in the city of Memphis.  On July 13, 1894, they purchased from the First National Bank of Memphis a draft for $3,000, payable to their order, and drawn on the defendant, the First National Bank of New York.  After getting this draft, they indorsed it "pay to H. C. Hamilton or order," and then

placed it in the hands of one Weems, to be delivered to the indorsee, Hamilton. The drawing, indorsement, and delivery of this draft were the result of a fraudulent scheme which Weems practiced upon complainants.

They were induced by him (at that time a man of fine reputation in the community) to think Hamilton was a real person, who had consigned to him as warehouseman, for storage and sale, a large lot of cotton, and this draft represented the advance which complainants agreed to make to the supposed consignor upon this cotton, upon an understanding that they were to sell same and earn the commissions accruing therefrom. It turned out, however, that Hamilton was nonexistent, and that Weems had no such cotton under his charge. But the record discloses that complainants neither knew, nor had occasion to suspect, such to be the facts, but, believing that Hamilton was a real personage, and with the view of carrying out this agreement with Weems, they purchased this draft and turned it over to him, indorsed, as is stated above, for delivery to their indorsee.

Immediately after its receipt, Weems indorsed it to himself or order, using for this purpose the name of Hamilton, and then carried it to the Mercantile Bank of Memphis, and that bank, without any suspicion of the bad faith of the transaction, or of the right of Weems to transfer title upon his indorsement, paid him full value for it, and then forwarded

it to its correspondent in New York, by whom, in due time, it was presented to the drawee, who, equally ignorant of the want of title in Weems, and in perfect good faith, paid it. Discovering within a few days the fraud practiced upon them, and at the same time that the draft had already been paid, this bill was filed by complainants, the payee, against the drawee, the First National Bank of New York and the Mercantile Bank of Memphis; against the first upon an *assumpsit* implied from the wrongful appropriation of the draft and a refusal to account for its proceeds, and against the latter as a garnishee holding funds of the former subject to attachment. Two defenses are made:

1. That complainants were guilty of such carelessness in their dealings with Weems as to estop them from setting up the present claim.

2. That the indorsement by Chism, Churchill & Co. of this draft to a fictitious indorsee was in law an indorsement to bearer, and the result was that its payment through the usual channels of trade, without notice of the alleged defect, discharged the drawee.

As to the first of these grounds, it is sufficient to say that the record fails to show any recklessness or carelessness upon the part of complainants in this transaction to prevent a recovery, if for any sound reason this suit is maintainable. It is the second ground, however, upon which the defendants rest largely their defense to this claim. What is the

effect of indorsing a bill to a fictitious person, the indorser not knowing that the indorsee was fictitious, but, on the other hand, believing him to be a real person, is a question of first impression in this State. There is no doubt it is true, as a general proposition, that the holder of commercial paper, payable to order, must trace his title through a genuine indorsement, including that of the payee. 2 Randolph, § 988; 1 Daniel, § 519; *Mead* v. *Young*, 4 T. R., 28–30.

And it is equally true that where a banker pays a draft or check drawn upon him, he, at his peril, pays it to anyone but the payee, or to one who is able to trace his title back to the payee through genuine indorsements. The mere possession of the check or bill, under apparent title, does not necessarily imply the right to demand or receive payment, and when it is paid to such holder the drawer has put upon him the risk of seeing that the apparent is the real title to the paper. For the banker holds the funds of his depositor, under an obligation to pay them to him or to his order, and if he pays them otherwise he cannot treat such a payment as a discharge of his liability. *Shipman* v. *Bank*, 126 N. Y., 318; *Robards* v. *Tucker*, 16 Q. B., 575; *Dodge* v. *Bank*, 30 Ohio St., 1.

It is otherwise as to his payment of a check or bill payable to bearer. In such a case, in the absence of knowledge that the party presenting the paper is wrongfully in possession of it, he can safely

pay, because in so doing he is complying with the positive demand of his depositor. Tiedeman on Commercial Paper, § 312.

And it is insisted for the defense that this was the legal effect of the indorsement by Chism, Churhill & Co. to Hamilton, the fictitious indorsee.

It seems from a note to Byles on Bills, p. 79, that the controversy over the effect of the indorsement of bills to fictitious persons grew out of the bankruptcy of Linsay & Co. and Gibson & Co., who negotiated bills with fictitious names upon them to the amount of nearly a million sterling a year. A great many cases grew out of these indorsements in the various Courts of England, one of which, *Minut* v. *Gibson*, was carried to the House of Lords. 1 H. Bl., 569. Mr. Chitty, in his work on Bills, p. 178, says: "The result of the discussion seems to be that a bill payable to a fictitious person, or his order, is in effect a bill payable to bearer, and may be declared on as such, in favor of a *bona fide* holder ignorant of the fact, against all the parties knowing that the payee was a fictitious person." In other words, whether such a bill was collectible by the holder as if payable to bearer, depended upon the fact that the party against whom it was sought to be enforced, at the time he assumed liability upon it, knew that the payee was fictitious. Where he possessed such knowledge, he was estopped from saying to a *bona fide* holder that he was not bound; otherwise, he

would be a party to the circulation of commercial paper, apparently good, yet with an inherent vice which rendered it worthless, at least as to him, though it fell into the hands of an innocent purchaser.

Subsequently the Bill of Exchange Act of 1882 was passed, the effect of which was, in part, that a bill might be treated as payable to bearer when the party named as payee was a real person, but has not, and was not intended by the drawer, to have any right arising out of it. *Governor & Company Bank* v. *Vagliano Bros.*, Law Rep., Vol. I., Appeal Cases, p. 107.

In this country, among the text-writers, Mr. Daniel states the rule as general, and says that "in the case of a note payable to a fictitious person, it appears to be well settled that any *bona fide.* holder may recover on it against the maker as upon a note payable to bearer. It will be no defense against such *bona fide* holder for the maker to set up that he did not know the payee to be fictitious." Mr. Daniel rests the rule upon the ground of estoppel, but Mr. Randolph, in his work on Commercial Paper, Vol. I., § 164, note 4, suggests that the cases cited by him to support his text "apply this rule only when the maker has, by his words or conduct, raised any estoppel against himself," and this latter author fails in his text, as we understand it, to give the sanction of his approval to the rule as announced by Mr. Daniel.

Chism, Churchill & Co. *v.* Bank.

The question presented in this case has arisen and been discussed in but few of the American Courts, and the conclusions reached by them have been variant. *Blodgett* v. *Jackson*, 40 N. H., 21, relied upon by the defendants in this case, we think is not authority for the rule contended for by them. There a note payable to a firm, of Whitney, Shaw, Lent & Hawes was in the possession of Lent, and was sold and transferred by him, for value, to the plaintiff in the action. The defendant, the maker of the note, denied the genuineness, of the indorsement. To the issue made by this denial the Court said: ''The bare possession of this note by this person was competent evidence to be submitted to the jury that he (the party transferring) was the Lent named in the note, and, of course, a member of the firm, and authorized to indorse it in the manner he did. Here was a note which the evidence tends to show was genuine, payable to Whitney, Shaw, Lent & Hawes, a thing of value and likely to be in the possession of the owners; such possession, therefore, raised a presumption of ownership.''

*Kahn* v. *Watkins*, 26 Kan., 691, does raise the precise question here presented, and is a direct authority for the contention of defendants. In that case it was held that the drawer of a bill who makes it payable to a fictitious person, and transmits to a third person for delivery to the payee, is bound to a *bona fide* purchaser from that third party, who indorses it with the name of the payee,

though the drawer, when he issued the bill, believed that the payee, was a real person, and intended it to be delivered to him only upon the receipt of a valuable consideration from him.

The Court rested its opinion on the text of Mr. Daniel, which has already been adverted to, and certain cases which were regarded as authorities, to sustain the rule adopted. *Lane* v. *Kreker*, 22 Iowa, 399, one of these cases, while it contains a *dictum* which is in harmony with the conclusions reached by the Court citing it, was confessedly not an authority on the real point in controversy, as in that case the note sued on was payable to bearer. Another of these cases is *Phillips* v. *Inthum*, 114 Eng. C. L., 694. There the signature of the drawer, as well as the indorsement, was a forgery, but the acceptor was held liable upon the ground that he had misled the holder. The ground of the decision, as stated by Keating, J., in the final disposition of this case, reported in 1 Law Rep. C. P., 463–472, was that "upon the facts stated in this special case, it was not competent for the defendant to deny the genuineness of this bill. He knew that the plaintiffs were willing to advance money upon the bill only upon his vouching, by his acceptance of it, the authenticity of the drawing." *Forbes* v. *Espy*, 21 Ohio St., 474, was also relied upon in *Kahn* v. *Watkins*, *supra*. In that case E., W. & Co. issued a bill on New York to the order of C., H. & Co., its purchasers, who indorsed it to one Charles Clark,

whose real name, however, was Maro. This was a case of a fictitious payee, but of a man with an alias—or an assumed name—taking title in this assumed, rather than his real, name. So the Court held that the indorsement and delivery of this bill to Clark must be regarded as an affirmation to all persons not otherwise informed, that there was such a person as Charles Clark, and that Mora was that person. We do not think, upon these facts, that this case can be said to support the general rule to which it was cited, and this was evidently the view of the Supreme Court of Ohio in a case to be referred to at length hereafter.

Upon the other hand, we have at least two well-considered cases, which, in effect, adopt the English rule, to wit: that only such paper as is issued to a fictitious payee or indorsee by the party sought to be bound, with full knowledge of the fact, shall be treated as payable to bearer.

In one of these cases — that of *Armstrong* v. *National Bank*, 46 Ohio St. Rep., 512—after a careful review of the authorities, it is said: "If the drawer of a check, acting in good faith, makes it payable to a certain person or order, supposing there is such person, when, in fact, there is none, no good reason can be perceived why the banker should be excused if he pay the check to a fraudulent. holder upon any less precautions than if it had been made payable to a real person; in other words, why he should not be required to use the

same precautions in the one case as in the other—
that is, determine whether the indorsement is a gen-
uine one or not.    The fact that the payee is a
nonexisting person does not increase the liability of
the bank to be deceived by the indorsement.''

The case of *Shipman* v. *The Bank of New York*,
126 N. Y. R., 318, involved over two hundred
thousand dollars, was argued by counsel of research
and ability, and was determined by a Court of
deserved reputation.    In that case it appeared that
the plaintiffs were depositors in the defendant bank.
They drew checks for large sums to fictitious payees,
supposing them to be real persons.    These checks
were given to a trusted employee to be turned over
to the respective payees.    Instead, however, this
employee indorsed the names of the payees upon
them and had them presented to the drawee, when
they were paid without inquiry or suspicion of the
genuineness of the indorsements.    Suit having been
instituted by the drawer to recover the sum so paid
out, it was resisted upon the ground that these
checks were, in law, payable to bearer.    The Court,
however, speaking through O'Brien, J., say: ''The
maker's intention is the controlling consideration
which determines the character of such paper.    It
cannot be treated as payable to bearer unless the
maker knows the payee to be fictitious and actually
intends to make the paper payable to a fictitious
person.''

We think the rule, thus limited, is reasonable,

while to eliminate the element of knowledge or intent would leave it harsh and unreasonable. In addition with this limitation the law of negotiable paper, so far as it involves the question of forgery, is consistent. For it is universally conceded that the payment of a check or a bill drawn to the order of a real person, upon a forged indorsement of the payee's name, will not protect. In such a case the banker is still liable to the owner for the funds in hand as though no payment had been made. 3 Randolph on Com. Paper, § 1739. And this would be so even if the forger should personate an intended payee of the same name. *Commonwealth* v. *Foster*, 114 Mass., 311. Then, in a case where the drawer has been guilty of no wrong, but innocently issues or indorses his check or bill to a fictitious person believing him to be real, and a third party, without authority, writes the name of · this fictitious payee or indorsee upon it, and by this fraud succeeds in collecting it, why should the drawee, by payment of such indorsement, discharge himself from liability to the drawer? The writing of the name of the nonexisting payee, under such conditions, is forgery at common law (4 Black., 247; 2 Wh. Cr. L., § 653), and under the Code (M. & V.), § 5492.

In the present case, without fault on the part of the complainants, the drawee has paid upon a forged indorsement, to a party not entitled to collect it, a bill of which Chism, Churchill & Co. were owners,

and which no one had a right to collect save upon their order, and now has it and declines to account for its value. Under these circumstances, we think the Chancellor was right in holding the drawee liable, and we therefore affirm his decree.