UNAKA NATIONAL BANK *v.* HENRY BUTLER, for use of
.THOMAS DAVIS.

(*Knoxville.*   September Term, 1904.)

1. **BILLS AND NOTES.** Negotiable bank check indorsed in
   blank passes by delivery.

   A bank check drawn payable to a specified person or order is
   a negotiable instrument, and when indorsed in blank is payable
   to bearer, and passes by delivery as freely and absolutely as
   a bank note, and a *bona fide* purchaser in due course of bus-
   iness acquires a good title.   (*Post, p.* 579.)

   Acts cited and construed: Negotiable Instruments Law, Acts 1899,
   ch. 94, secs. 9 (5), 57,.185.

   Cases cited and approved:  Gardner v. Bank, 1 Swan, 425; Neely
   v. Morris, 2 Head, 595; King v. Fleece, 7 Heis., 277; Smith v.
   Mosby, 9 Heis., 501; Bearden v. Moses, 7 Lea, 459; Bank v.
   Aull, 93 Tenn., 647; Chism v. Bank, 96 Tenn., 644; Farmer v.
   Bank, 100 Tenn., 188.

2. **SAME.** Same.  Loser of bank check indorsed in blank cannot
   recover from bank paying it to a bona fide purchaser after notice
   of loss to bank.

   Where a negotiable bank note, indorsed in blank, is lost, the loser
   cannot recover of the bank the amount thereof, for paying it
   to a *bona fide* purchaser after such loss, though he had notified
   the bank of its loss.   (*Post, pp.* 579, 580.)

   Cases cited and approved:  Hunt v. Sanford, 6 Yer., 387; Van
   Wyck v. Norvell, 2 Hum., 195; Ryland v. Brown, 2 Head, 273;
   Merritt v. Duncan, 7 Heis., 156; Jordan v. Jordan, 10 Lea, 134;
   Caulkins v. Gaslight Co., 85 Tenn., 693; Smith v. Railroad, 91
   Tenn., 221; Memphis Bethel v. Bank, 101 Tenn., 131.

   Cases cited, distinguished, and approved:  Pickle v. Muse, 88
   Tenn., 381; Chism v. Bank, 96 Tenn., 644.

Bank v. Butler.

3. **SAME. Same. Same. Purchaser of lost negotiable instrument, before maturity, without actual knowledge of infirmity and without bad faith, acquires title, when.**

The purchaser of a negotiable instrument before maturity and in due course of trade,. without actual knowledge of an infirmity therein or of defect of title in the person negotiating the same, or without knowledge of such facts as would make his action in taking the instrument amount to bad faith, is a *bona fide* purchaser, and as such is entitled to payment, and his title will not be defeated because he received it under merely suspicious cir-·cumstances. (*Post, pp.* 580-586.)

Acts cited and construed: Negotiable Instruments Law, Acts 1899, ch. 94, sec. 56.

Cases cited and distinguished: Hunt v. Sanford, 6 Yer., 387; Van Wyck v. Norvell, 2 Hum., 195; Ryland v. Brown, 2 Head, 273; Merritt v. Duncan, 7 Heis., 156; Gill v. Cubitt, 3 Barn. & Cress., 446.

Cases cited and approved: Cheever v. Railroad, 150 N. Y., 65; Magee v. Badger, 34 N. Y., 249; Bank v. Belting Co., 148 N. Y., 705; Knox v. Eden, etc., Co., 148 N. Y., 454; Bank v. Diefendorf, 123 N. Y., 202; Vosburgh v. Diefendorf, 119 N. Y., 357; Jarvis v. Beach Co., 148 N. Y., 652; Swift v. Smith, 102 U. S., 442; Murray v. Lardner, 2 Wall., 710.

4. **SAME. Same. Same. Same. A purchaser of lost negotiable instrument, indorsed in blank, from an unknown holder, acquires title, when; case in judgment.**

·Where a negotiable bank check, indorsed in blank and lost, is purchased by a merchant in due course of trade, within one week after its issuance, from a customer who was unknown to him, but supposed to be the payee, without further indorsement or inquiry as to the identity of the customer, such purchaser acquires a perfect title to the check, and is entitled to payment; in consequence of which, the loser of the check loses his title, and is not entitled to recover the amount thereof from the bank.

FROM WASHINGTON.

Appeal from the Circuit Court of Washington County.—A. J. TYLER, Judge.

KIRKPATRICK, WILLIAMS & BOWMAN, for Bank.

J. B. Cox, for Butler.

MR. JUSTICE SHIELDS delivered the opinion of the Court.

This action involves the title of a *bona fide* purchaser of a bank check payable to a particular payee or order, and indorsed in blank by the payee, as against that of the rightful owner, who lost it; and the construction of certain sections of the negotiable instrument law (chapter 94, p. 139, Acts 1899).

W. B. Harris, a manufacturer of Johnson City, Tenn., a regular depositor in the Unaka National Bank, of that city, plaintiff in error, drew his check upon that bank November 24, 1903, in favor of Henry Butler, or order, for $16.25, and delivered it to him. Henry Butler indorsed it in blank and delivered it for value to Thomas Davis, who the next day lost it, presumably upon the public highway. On the second day, Thomas Davis gave notice to Harris, the drawer, of his loss; and both he and

Harris then notified the bank, and directed it not to pay the check if presented for that purpose. The check was accepted by Ward & Fryberg, merchants in Johnson City between November 24 and December 1, 1903, for goods sold, from a customer who was unknown to them, but supposed at the time to be the payee, without further indorsement, or inquiry of the identity of the holder or the nature of his title. They indorsed and presented it to the bank, and it was paid and charged to the account of the drawer, W. B. Harris. This action is brought by Henry Butler, for the use of Thomas Davis, against the plaintiff in error, to recover the proceeds of the check. The circuit judge tried the case without the intervention of a jury, and gave judgment in favor of the plaintiff below, and the bank brings the case here for review and assigns error.

The theory upon which this suit is brought is that the bank having been notified of the loss of the check by the former rightful owner and the drawer, and directed not to honor it, the subsequent payment was unauthorized, and a wrongful interference with the property of the defendant in error, for which it must answer, and, further, that Ward & Fryberg were not *bona fide* holders, and acquired no title to the check, because the suspicious circumstances attending its negotiation, and their negligence in failing to require identification of their customer, fixed them with constructive notice of the infirmity in his title.

113 Tenn—37.

1. The defendant in error, in support of his first contention, cites and relies upon the case of *Chism* v. *Bank,* 96 Tenn., 644, 36 S. W., 387, 32 L. R. A., 778, 54 Am. St. Rep., 863, in which it is said: "And it is equally true that, where a banker pays a draft or check drawn upon him, he, at his peril, pays it to any one but the payee, or to one who is able to trace his title back to the payee through genuine indorsements. The mere possession of the check or bill under apparent title does not necessarily imply the right to demand or receive payment, and, when it is paid to such holder, the drawee has put upon him the risk of seeing that the apparent is the real title to the paper. For the banker holds the funds of his depositor under an obligation to pay them to him or to his order, and, if he pays them otherwise, he cannot treat such a payment as a discharge of his liability."

And that of *Pickle* v. *Muse,* 88 Tenn., 381, 12 S. W., 919, 7 L. R. A., 93, 17 Am. St. Rep., 900, in which it is held that "a check drawn in favor of a particular payee or order is payable only to the actual payee, or upon his genuine indorsement; and, if the bank mistake the identity of the payee, or pay upon a forged indorsement, it is not a payment in pursuance of its authority, and it will be responsible."

The law undoubtedly is, as held in these cases, that a check payable to a particular payee or order cannot lawfully be paid to any other than the payee, or upon his, genuine indorsement, and the bank must judge of the identity of the payee and the genuineness of his indorsement at its peril.

But these principles have no application to the case presented by this record. There was no mistake made in the identity of the payee, and the indorsement is genuine. The check, while payable to the payee or order, was indorsed by the payee in blank before it was lost, and was purchased by Ward & Fryberg in due course of business, for value, and without notice of any defect in the title of the holder from whom they received it. They acquired a perfect title, and payment to them by the bank was authorized.

A check drawn as this one is a negotiable instrument, ' and, when indorsed in blank, is payable to bearer, and passes by delivery as freely and absolutely. as a bank note, and a *bona fide* purchaser in due course of business acquires a good title. Negotiable Instrument Law, Acts 1899, ch. 94, section 9 (5), and sections 57 and 185; *Chism* v. *Bank,* 96 Tenn., 644, 36 S. W., 387, 32 L. R. A., 778, 54 Am. St. Rep., 863; *Farmer* v. *Bank,* 100 Tenn., 188, 47 S. W., 234; *Gardner* v. *Bank,* 1 Swan, 425; *Neely* v. *Morris,* 2 Head, 595, 75 Am. Dec., 753; *King* v. *Fleece,* 7 Heisk., 277; *Bearden* v. *Moses,* 7 Lea, 459; *Smith* v. *Mosby,* 9 Heisk., 501; *Lookout Bank* v. *Aull,* 93 Tenn., 647, 27 S. W., 1014, 42 Am. St. Rep., 934; Daniel on Negotiable Instruments, section 693; Morse on Banks & Banking, section 393.

The title of Ward & Fryberg was not affected by the fact that the check had been lost by Davis, and found by their customer, further than that, when this was made to appear, the burden was on the bank to show that they

received it in due course of trade, for value and without notice; and, having successfully done this, the title of Davis was destroyed.

Mr. Daniels, in his work on Negotiable Instruments, section 1469, says: "Although the robber or finder of a negotiable instrument can acquire no title against the legal owner, still, if it be indorsed in blank, or payable or indorsed to bearer, a third party acquiring it from the robber or finder, *bona fide,* for a valuable consideration, and before (but not so, if after) maturity, without notice of the loss, may retain it as against the true owner upon whom the loss falls, and enforce payment by any party liable thereon, upon the principle that, whenever one of two innocent persons must suffer by the act of a third, he who has enabled such a third person to occasion the loss must sustain it."

See, also, *Jordan* v. *Jordan,* 10 Lea, 134, 43 Am. Rep., 294; *Caulkins* v. *Gaslight Co.,* 85 Tenn., 693, 4 S. W., 287, 4 Am. St. Rep., 786; *Smith* v. *Railroad,* 91 Tenn., 221, 18 S. W., 546; *Merritt* v. *Duncan,* 7 Heisk., 156, 19 Am. Rep., 612; *Hunt* v. *Sanford,* 6 Yerg., 387; *Van Wyck* v. *Norvell,* 2 Humph., 195; *Ryland* v. *Brown,* 2 Head, 273; *Memphis Bethel* v. *Bank,* 101 Tenn., 131, 45 S. W., 1072; 8 Cyc. of Law & Procedure, 57; Rand on Commercial Paper, section 1683.

2. The contention of the defendant in error that Ward & Fryberg are not *bona fide* purchasers, because while they had no actual knowledge that the check had been lost and was being fraudulently negotiated, the circum-

Bank v. Butler.

stances attending their purchase were calculated to ex-
cite suspicion and put an ordinarily prudent man upon
inquiry which would have led to knowledge of the de-
fect in the title of the holder, and this and their neg-
ligence in failing to require identification of their cus-
tomer, charged them with constructive or implied notice
of all the facts that inquiry would have developed, is al-
so unsound and untenable, both in law and upon the
facts disclosed in this record.  The doctrine of construc-
tive notice here insisted upon, contrary to the rule ad-
ministered in the courts of nearly all the States, and
those of the United States and England, did obtain for
many years in this State, and this court uniformly held
that if a purchaser of negotiable paper had implied no-
tice of prior equities or infirmities of any nature in the
title of the holder from whom he purchased—that is,
if anything appeared upon the face of the paper, or from
the facts and circumstances attending its possession or
sale, which would put one of ordinary prudence upon
inquiry that would lead to actual knowledge of the eq-
uities or infirmities, he was bound to pursue such inquir-
ies, and was charged with notice of the facts he could
have learned.  *Merritt* v. *Duncan,* 54 Tenn., 164, 19 Am.
Rep., 612; *Hunt* v. *Sanford,* 6 Yerg., 387; *Van Wyck* v.
*Norvell,* 2 Humph., 195; *Ryland* v. *Brown,* 2 Head, 273.

The original rule governing the transfer of commer-
cial paper, as first held in the courts of England and this
country, protected the purchaser for value, in due
course of trade, unless he had actual knowledge of the

defects in the title of the holder, or of facts which convicted him of bad faith in the transaction.

This was held to be the law until in 1824, when Lord Chief Justice Abbott (Lord Tenderden), in the case of *Gill* v. *Cubitt,* 3 Barn. & Cress., 446, announced the principle that, although the holder had paid value for the instrument, yet, if he received it under circumstances which ought to have excited the suspicions of a prudent and careful man, he could not recover; and this case was followed by the courts of that country and some of those of America, but not without serious question, until 1834, when a return was had to the original rule by the courts of England and the supreme court of the United States and a large number of the States, and since then it has been almost uniformly held in these jurisdictions that, in the absence of actual knowledge of defects in the title of the holder, the only question was one of good faith in the transaction, and negligence and want of diligence in ascertaining the previous history of the instrument were only circumstances to be considered in determining that question. Daniels on Negotiable Instruments, sections 770-775.

This court, however, continued to adhere to the doctrine announced in *Gill* v. *Cubitt,* supra, and applied the rule of constructive or implied notice, until April, 1899, when it was abrogated, and what may be called the majority rule was adopted, by the enactment of the Negotiable Instruments Law, section 56 of which is in these words: "To constitute notice of an infirmity in

an instrument, or defect of the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith."

This statute—the Negotiable Instruments Law—is a substantial reproduction of that enacted in the State of New York in 1896,and which has since been enacted in a majority of the States for the obvious purpose of securing uniformity in the law of commercial paper in all the States. Section 56 of our statute (Acts 1899, p. 150, c. 94), above set out, embodies the majority rule upon the subject of notice as it has been held and administered by the courts of New York and other States and the federal courts for many years. This section has not been construed by this court, and what facts will constitute bad faith in the purchase of commercial paper has not been declared, but the question has frequently been before the courts in which the majority rule had obtained previous to the enactment of the statute in those jurisdictions; and the decisions of those courts in furtherance of the legislative policy to promote uniformity in the law of commercial paper are entitled to. great weight with this court in interpreting the meaning of our statute. These courts all seem to hold that the purchaser of a negotiable instrument owes no duty to the former holders to actively inquire into the title of the party in possession, and that circumstances of suspicion and gross negligence are not of themselves bad faith,

but only evidence tending to establish it. The rule is as stated in the leading case of *Cheever* v. *Pittsburgh, S. & L. E. R.* Co., 150 N. Y., 65, 44 N. E., 701, 34 L. R. A., 69, 55 Am. St. Rep., 646, in these words: "There is not much difficulty in stating the rule of law defining the duties and obligations of a party to whom negotiable paper is presented for discount or sale before due. He is not bound at his peril to be on the alert for circumstances which might possibly excite suspicion of wary vigilance. He does not owe to the party who puts the paper afloat the duty of active inquiry in order to avoid the imputation of bad faith. The rights of the holder are to be determined by the simple test of honesty and good faith, and not by a speculative issue as to his diligence or negligence. The holder's rights cannot be defeated without proof of actual notice of the defect in title or bad faith on his part, evidenced by circumstances. Though he may have been negligent in taking the paper, and omitted precautions which a prudent man would have taken, nevertheless, unless he has acted in *mala fide,* his title, according to settled doctrine, will prevail." Citing *Magee* v. *Badger,* 34 N. Y., 249, 90 Am. Dec., 691; *Am. Ex. Nat. Bank* v. *New York Belting, etc., Co.,* 148 N. Y., 705, 43 N. E., 168; *Knox* v. *Eden Musee American Co.,* 148 N. Y., 454, 42 N. E., 988, 31 L. R. A., 779, 51 Am. St. Rep., 700; *Canajoharie Nat. Bank* v. *Diefendorf,* 123 N. Y., 202, 25 N. E., 402, 10 L. R. A., 676; *Vosburgh* v. *Diefendorf,* 119 N. Y., 357, 23 N. E., 801, 16 Am. St. Rep., 836; *Jarvis* v. *Manhattan Beach Co.,* 148 N. Y.,

652, 43 N. E., 68, 31 L. R. A., 776, 51 Am. St. Rep., 727.

In the case of *Swift* v. *Smith*, 102 U. S., 442, 26 L. Ed., 193, it is said: "There is nothing in the case to show that Smith's purchase was not in good faith. There was nothing upon the note, nor anything in the indorsement thereon, to notify him that it did not belong to Jackson, both legally and equitably. It was a mercantile paper, and not due. One who purchases such paper from another who is apparently the owner, giving consideration for it, obtains a good title, though he may know facts and circumstances that cause him to suspect, or would cause an ordinarily prudent man to suspect, that the person from who he obtained it had no interest in it, or authority to use it for his own benefit; and, though by ordinary diligence he could have ascertained these facts, he can lose his rights only by actual knowledge or bad faith. It is true that, if the bill or note be so marked on its face as to show that it belongs to some other person than the one who offers to negotiate it, the purchaser will be presumed to have knowledge of the true owner, and its purchase will not be held to be *bona fide*.

And in *Murray* v. *Lardner*, 2 Wall., 710, 17 L. Ed., 857, Judge Swayne, for the court, said: "I believe we are all of the opinion that gross negligence only would not be sufficient where the party has given a consideration for the bill. Gross negligence may be taken as evidence of *mala fides*, but it is not the same thing. We have shaken off the last remnant of the contrary doctrine. Where the bill is passed to the plaintiff without any

proof of bad faith in him, there is no objection to his title."

The text of the Cyclopedia of Law & Procedure, vol. 7, 944-945, citing numerous cases decided by the supreme court of the United States, and those of last resort of States of Alabama, California, Colorado, Georgia, Illinois, Iowa, Kansas, Kentucky, Maryland, Massachusetts, Michigan, Missouri, Nebraska, New Jersey, New York, Ohio, Pennsylvania, South Carolina, Virginia, Connecticut, Delaware, Texas and Minnesota, states the law upon this subject thus: "The principle is now well established that neither the circumstances of defect of title, knowledge of circumstances which would excite suspicion in the mind of a prudent man or put him upon inquiry, nor gross negligence upon the part of the taker, will affect his right, unless the circumstances of suspicion are so cogent and obvious that to remain passive would amount to bad faith. In other words, the question is one of good or bad faith, and not of diligence or negligence, so far as the want of caution is material as bearing upon the question of good faith; and suspicions or knowledge of facts which falls short of bad faith do not amount to notice. In jurisdictions where this rule obtains, it is nevertheless held that, where circumstances are such as to justify the conclusion that the failure to make inquiry arose from a suspicion that inquiry would disclose a vice or defect in the instrument or transaction, such indorsee would be charged with knowledge."

We think the rule announced by the authorities is in accordance with the spirit and purpose of our statute, and supported by reason and justice, and we are content to follow it.

There is no doubt, upon this record, that Ward & Fryberg purchased this check for value, in due course of trade, and without actual knowledge of the infirmity in the title of holder. It is equally clear that there was no bad faith in the transaction. The result is, they acquired a perfect title to the check by their purchase, and had the right to collect it; and at the same time, in consequence of the same facts, Thomas Davis lost his title, and is not entitled to recover its proceeds from the bank.

The judgment of the circuit court is reversed, and the suit dismissed.