## THE DELTA LUMBER COMPANY v. BRADLEY S. WILLIAMS ET AL.

*Principal and agent—Manufacturing corporations—Authority of cashier—Settlement—Findings of fact.*

1. The admission of irrelevant testimony is no ground for reversing a judgment rendered upon a finding of facts in no way based upon such improper testimony.

---

2. The finding of the circuit judge upon the facts is conclusive where there is any evidence to support it, the weight of which will not be considered upon a writ of error.

3. Corporations are bound by the acts of their agents to the same extent, and under the same circumstances, as natural persons.

4. Agents may have as much or as little power as their principals see fit to give them. One dealing with an agent is bound to inquire into the extent of his authority, not from the agent, in the absence of written evidence thereof, but from the principal, if accessible; and dealings or engagements of the agent beyond the scope of his authority do not bind the principal. *Bond v. Railroad Co.*, 62 Mich. 643.

5. Compromising claims, settling unliquidated damages, and releasing debts due to the corporation, are acts which do not come within the ordinary duties of a cashier, book-keeper, or corresponding clerk.

6. The statute authorizing the formation of corporations for manufacturing purposes enacts that its stock, property, affairs, and business shall be managed by its board of directors, who shall choose one of their number to be president, one to be vice-president, and also a secretary and treasurer. Such corporations are authorized to elect in such manner as they shall determine all necessary officers, and to prescribe their duties.

7. In the absence of anything in the charter or by-laws of a manufacturing corporation defining the duties of its cashier, and of any showing as to the usage of the company, or of such corporations in this State, by which the duties of a cashier may be inferred, he may be considered the executive officer of the financial operations of the corporation, and whether he would, in an emergency, be considered as authorized to sell and convert the personal property of the corporation into money to meet its obligations, need not now be determined, but it is certain that he would have no authority, as such cashier or general financial agent, to give away the property of the corporation, or change its relations with its debtor by releasing a debt due to it, without express authority.

Error to Kalamazoo. (Buck, J.) Argued October 25, 1888. Decided November 28, 1888.

*Assumpsit.* Plaintiff brings error. Reversed. The facts are stated in the opinion.

*E. M. Irish* (*Moore & Moore*, of counsel), for appellant, contended:

1. The letters did not make a contract, there was no consideration for the settlement, and the agent claimed by defendants to have made it had no authority to, nor did he in fact, make the settlement claimed.

2. The letters do not make such an unequivocal proposition on one side and acceptance on the other as to place the parties in contract relations; citing *Johnson v. Stephenson*, 26 Mich. 63; *Van Valkenburg v. Rogers*, 18 Id. 180.

*Dallas Boudeman*, for defendants, contended:

1. The court did not base his finding of facts upon any of the testimony which was objected to, hence the objections and exceptions are immaterial; citing *Mower's Appeal*, 48 Mich. 441.

2. The trial judge determines the sufficiency of the evidence, and the credibility of the witnesses, and draws his conclusions from the evidence, which will not be disturbed; citing *Edwards v. Nelson*, 51 Mich. 121; *Treasurer of Berrien v. Bunbury*, 45 Id. 79; *Hyler v. Nolan*, Id. 357; *Green v. Gill*, 47 Id. 86.

3. In support of the claim that under the evidence Kelly was authorized to bind the corporation, counsel cited 2 Kent, Com. (8th ed.) 614; *Reynolds v. Collins*, 78 Ala 94; *Phillips v. Campbell*, 43 N. Y. 271; Morawetz, Corp. § 502; 2 Id. §§ 585, 598, 616; *Thurber v. Anderson*, 88 Ill. 167; 1 Wait's Act. & Def. par. 4, § 5, p. 228; *Hull v. Jones*, 69 Mo. 587; *Mfg. Co. v. Holdfodt*, 86 Ill. 455; Story, Agency, §§ 54, 57, 59, 85, 127, 131-133.

CHAMPLIN, J. This cause was tried in the court below, without a jury, and a written finding of facts and conclusions of law filed by the circuit judge. Some of the errors assigned in this Court relate to the admission of irrelevant testimony, but as the facts found by the circuit judge appear not to have been based at all upon such improper testimony, the judgment should not be reversed for that cause.

The plaintiff brought this action to recover the price of three car-loads of lumber sold and delivered to defendants.

The defense set up was that, prior to the delivery of the lumber in question, plaintiff had entered into a written contract to sell to defendants 200,000 feet of tank

plank, to be delivered at Kalamazoo, at $16, within a reasonable time; that plaintiff had neglected and refused to perform this contract, and the price had advanced, whereby the defendants were damaged.

As a further defense they set up that, in consideration that defendants would purchase and pay for 200,000 feet of tank plank, plaintiff agreed with defendants that it would ship to defendants a sample car-load of tank plank, and would sell to defendants of such tank plank 200,000 feet; averred that plaintiff neglected to ship to defendants such sample within a reasonable time, and for a space of 18 months; that the price of such plank had advanced, and they were obliged to and did pay more therefor than the price agreed upon with plaintiff; that afterwards the plaintiff agreed to ship defendants a car-load of tank plank as a sample, and, if defendants were satisfied that it was of the quality ordered, said plaintiff would fill said order of 200,000 feet, but, if it was not satisfactory, defendants should keep it and the two car-loads before sold and delivered to defendants in settlement and satisfaction of their damages on account of the failure of plaintiff to do as agreed; that thereupon plaintiff shipped a sample car of what is claimed to be tank plank, but it was of inferior quality, and almost entirely useless for any purpose, and by reason thereof defendants were entitled to retain whatever they had received of said three car-loads of lumber as their damages for the non-fulfillment of its contract by plaintiff.

The circuit judge found that the plaintiff had shipped three car-loads of lumber to defendants at respective dates claimed by the plaintiff, and that the net value thereof was $405.21. He also found that a written contract was entered into between plaintiff and defendants that plaintiff should, within a reasonable time after October 15, 1885, ship to defendants a car of tank plank as a sample,

which, if acceptable to defendants, was to be the basis for an order for 200,000 feet of tank plank tendered plaintiff by defendants October 2, 1885, and that such contract was never performed by the plaintiff.　He further found that defendants had proven a settlement of the claim of plaintiff against defendants for the lumber in question, by the terms of which settlement the defendants were not to pay anything for said lumber; that such settlement was upon a good and valid consideration, and was duly authorized by plaintiff, and that the minds of the parties met and agreed upon the terms of such settlement.　And as matter of law from the foregoing facts he found a judgment in favor of defendants.

The testimony from which the facts are found by the circuit judge is all returned, and made a part of the bill of exceptions.　The main contest is over the facts found by the court pertaining to a settlement.

The finding of the circuit judge upon the facts, in non-jury trials, is conclusive where there is any evidence to support it, and the weight of evidence will not be considered by this Court upon writ of error.　But where there is no evidence to sustain a finding, or if any particular or material part of a finding be without evidence to sustain it, then it is not binding upon the parties or upon this Court, and the finding must be held erroneous. *Lovell v. Willard,* 28 Mich. 346; *Hubbardston Lumber Co. v. Bates,* 31 Id. 158.

The finding that there was a settlement of the plaintiff's claim for lumber, and that it was upon a good and valid consideration, and was duly authorized by plaintiff, is challenged; and especially is it claimed that there is no testimony showing that a settlement was authorized by the plaintiff.

The testimony of defendants was that a Mr. Kelly came to Kalamazoo in the early part of April, 1886, and

said he represented the plaintiff; that he had with him the correspondence which had passed between the parties relative to tank plank, and also the bills for the two carloads of lumber which plaintiff had sold to defendants, and requested payment of the bills; that defendants told him they wanted to pay the bills, but wanted the tank plank a good deal more; and after some conversation he proposed to send a sample car of tank plank, and, if defendants were satisfied with the sample, plaintiff would ship them 200,000 feet according to the sample, and, if they were not satisfied with sample sent, they could keep it, and not pay for it, nor the two car-loads of lumber they had bought of plaintiff, and the order for 200,000 feet of tank plank would be considered canceled; and that defendants accepted the proposition; that a sample car-load was shipped to defendants soon after, but it was not satisfactory, and they so notified the plaintiff.

The plaintiff then requested defendants to return the car-load of lumber at its expense, and to let the freight bill follow the car, or it would repay the freight if defendants had paid; but defendants refused, stating the arrangement they claimed to have made with Kelly. Further correspondence followed. Plaintiff denied that Kelly made the arrangement claimed, and asserted that he had no authority to present them with a car-load of lumber, and much less to present them with three carloads.

The circuit judge having found that the agreement to settle was made as testified to by the defendants, although denied by Kelly, the settlement must stand, if Kelly was authorized to make it. Corporations are bound by the acts of their agents to the same extent, and under the same circumstances, as natural persons. Agents may have as much or as little power as their principals see fit to give them, and one dealing with an

agent is bound to inquire into the extent of his authority, not from the agent, in the absence of a written evidence of authority, but from the principal, if accessible; and dealings or engagements of the agent beyond the scope of his authority do not bind the principal. *Bond v. Railroad Co.*, 62 Mich. 643 (29 N. W. Rep. 482.)

No express authority in this case was shown for Mr. Kelly to bind the plaintiff in making the settlement claimed by defendants. He went to Kalamazoo from Detroit, to collect from defendants two bills of lumber which plaintiff had sold and delivered to defendants at an agreed price. There was no dispute about this indebtedness, and no claim that the lumber was not what they bought. When he presented these bills and requested payment, he was met by a claim advanced by the defendants that they had a contract with plaintiff, by which it had undertaken to furnish to defendants 200,000 feet of tank plank, entered into 18 months before, and which had not been filled; that tank plank had advanced in price, and they were anxious it should be filled, and, if plaintiff did not intend to fill the order, they claimed damages.

Mr. Kelly then entered into a new agreement, which, in effect, was a renewal of the original agreement as to tank plank, with this additional feature: that, in case defendants were not satisfied with the sample sent, the defendants should pay nothing for the sample car-load of lumber, and the plaintiff should release all claim of indebtedness for the two car-loads before that time purchased by defendants. In other words, the arrangement amounted to this, and nothing more: If plaintiff would perform its contract, which defendants claimed was entered into in the fall of 1885, and which had been held open, and which defendants urged, from time to time, should be performed by sending forward a sample

car-load of tank plank, which, if satisfactory to defend
ants, should be the basis of an order for 200,000 feet of
the same kind of lumber, then, in the event that the
defendants should deem the sample unsatisfactory, the
plaintiff should give to defendants the sample car-load,
and the lumber before sold and delivered to defendants,
and for which they owed plaintiff.

This agreement, upon the face of it, was extraordinary,
to say the least.  It was equivalent to offering a premium
to defendants to reject the sample, for the plaintiff had
never admitted any liability to defendants for not send-
ing forward a sample car of their tank plank for defend-
ants to examine and determine whether it would suit
their wants, and it is difficult to see what damages
defendants had suffered by plaintiff's neglect to furnish
this preliminary to defendants, to enable them to decide
whether they would order the plank or not.  I doubt
very much whether an action would lie to recover dam-
ages for failure to perform such a contract as the court
found to have been entered into between the parties, for
the reason that it is too uncertain and indefinite to fur-
nish any *data* upon which to estimate damages.

The plaintiff did not undertake to furnish tank plank
of the quality ordered by defendants, nor of any specified
quality.  On the contrary, it refused to accept the order
sent, but offered to forward a sample of the plank it pro-
posed to sell, and, if this was satisfactory to defendants,
then it would furnish 200,000 feet according to the sam-
ple.  The defendants were not obliged to accept the
sample, even if it was better than that described in their
order originally sent; and, had the price declined, the
plaintiff could not have compelled an acceptance.  The
right to determine whether the sample was satisfactory
was placed absolutely in their control.

The only testimony in the case bearing upon the

authority of Kelly to make the settlement was that he was the cashier of the corporation, and was one of its book-keepers, and corresponding clerk. He wrote most of the letters which came from the plaintiff, and purported to be signed by the corporation by its president, which were offered in evidence; and he went to Kalamazoo in April to collect the bills for lumber sold to defendants at the time the settlement was claimed to have been made. He was not shown to have had the general management of the affairs of the corporation. It appears that the plaintiff is a manufacturing corporation, and deals in lumber; but the method in which it conducts its business, aside from the transaction involved in this litigation, does not appear. The fact that he was the cashier, book-keeper, and corresponding clerk, does not show that he had authority to make the settlement claimed to have been made in this case.

Compromising claims, settling unliquidated damages, releasing debts due to the corporation, are acts which do not come within the ordinary duties of a cashier, book-keeper, or corresponding clerk. The statute authorizing the formation of corporations for manufacturing purposes enacts that the stock, property, affairs, and business of every such corporation shall be managed by its board of directors. The board shall choose one of their number to be president, one to be vice-president, and also a secretary and treasurer. The office of cashier is not one that is named in the act, and although such corporations are authorized to elect in such manner as they may determine all necessary officers, and to prescribe their duties, yet no testimony in the case was introduced to show what the duties of the cashier were defined to be.

In banking institutions the authority of a cashier has become pretty well defined by common usage. He is considered the executive officer through whom and by whom

the whole moneyed operations of the bank in paying or receiving debts, or discharging or transferring securities, are to be conducted. Ang. & A. Corp. § 299. But his authority does not extend so far as to justify him in altering the nature of the debt, or changing the relation of the bank from that of a creditor to that of an agent of its debtor. And an agreement by the president and cashier of a bank, that an indorser shall not be liable on his indorsements, is not binding on the bank. *Bank v. Dunn*, 6 Pet. 51; *Bank v. Jones*, 8 Id. 16.

In the absence of anything in the charter or by-laws of the corporation known as the "Delta Lumber Company" defining the duties of the cashier of such corporation, and in the absence of any showing as to the usage of this company, or of manufacturing corporations in this State, by which the duties of a cashier may be inferred, we cannot ascribe to him greater powers as an agent of the corporation than would pertain to the agent of a banking corporation. He may be considered the executive officer of the financial operations of the corporation; and whether he would, in an emergency, be considered as authorized to sell and convert the personal property of the corporation into money to meet its obligations, need not now be determined, as certain it is that he would have no authority, as such cashier or general financial agent, to give away the property of the corporation, or change its relation with its debtor by releasing a debt due to it, without express authorization. *Bank v. Dunn*, 6 Pet. 51; *Kirk v. Bell*, 12 Eng. Law & Eq. 389; *Hoyt v. Thompson*, 5 N. Y. 320.

The question as to whether the alleged settlement was supported by a sufficient consideration was not fully argued, and we shall pass no opinion upon it at this time. For the reasons stated, we have concluded to reverse the judgment, and order a new trial.

The other Justices concurred.