KNOXVILLE WATER COMPANY *v.* EAST TENNESSEE NATIONAL BANK.

(*Knoxville.* September Term, 1910.)

1. CORPORATIONS. Cashier of a water company has no express authority to indorse the company's name on checks and deposit them to his personal credit, when.

Where the duties of a water company's employee, designated as "cashier," were to render and collect water bills, and deposit the collections in a certain bank, without authority to indorse the company's name, by himself, even on the checks collected by him, but by indorsement of such checks for the company in the name of "Elbert Wheeler, Treasurer," by a rubber stamp, and to deposit them so indorsed to the credit of the company under the name and style of the "Knoxville Water Company, Elbert Wheeler, Treasurer," with no authority whatever over this account to check against it or otherwise; but money was furnished by the treasurer, and kept in a separate account at the same bank, not in the name of the company at all, but in the name of such "cashier," as "I. A. Martin, Cashier," to be used by him in paying bills, expenses, etc., of the company, it is held that such cashier did not have express authority to indorse the water company's name by him as cashier, and thereunder indorse his individual name, and deposit the checks received by him, payable to the company for water bills, to his personal credit in another bank and subject to his own check, (*Post, pp.* 367-372.)

2. SAME. Same. Cashier of a corporation other than a bank has no implied authority to indorse and dispose of its commercial paper.

An office employee of a corporation other than a bank, designated as "cashier," has no implied authority over its financial operations by reason of his such title or designation, and hence

Water Co. v. Bank.

has no implied authority to indorse commercial paper in the name of his employer, and to dispose of the same. (*Post, pp.* 371, 372.)

Case cited and approved:   Lumber Co. v. Williams, 73 Mich., 86.

3. SAME. Same. Same. Bank allowing employee or officer of a corporation to indorse and deposit its checks to his personal credit cannot be relieved from liability on the ground of his apparent authority, when. .

Where the employee of a water company brings the company's checks to a bank, with which the company had no business relation, and indorses them in its name and deposits them to his individual credit, the transaction is such as to put the bank on sharp inquiry, even though such employee be an officer of the company, and the bank cannot relieve itself from liability for accepting such a deposit, and cashing the individual checks of such employee, upon the ground that it believed the employee to be acting within the apparent scope of his authority. (*Post, pp.* 372, 373.)

4. BANKS AND BANKING. Bank paying check upon a forged indorsement is liable to the payee thereof.     *

A bank receiving and collecting a check upon a forged indorsement of the payee's name is liable to the payee for its proceeds, although the bank has fully paid over and accounted for same to the forger, without knowledge or suspicion of the forgery. (*Post, pp.* 373, 374.)

Cases cited and approved:   Pickle v. Muse, 88 Tenn., 381; Chism v. Bank, 96 Tenn., 641; Farmer v. Bank, 100 Tenn., 187 (reviewing the authorities).

5. SAME. Same. Bank paying check upon unauthorized indorsement is liable to the payee thereof as upon a forged indorsement under negotiable instruments law.

The negotiable instruments law (Acts 1899, ch. 94, sec. 23), providing that a signature is forged or made without authority is wholly inoperative, unless the party against whom it is sought to enforce some right based thereon is precluded from setting

up the forgery or want of authority, places a check indorsed without authority on the same basis as a forged indorsement, although it is not technically a forgery in the sense of the criminal law; and a bank paying checks indorsed by an employee in his employer's name without authority, or permitting him to transfer them by such indorsement to the credit of his personal account with the bank, and to check out the same for his personal use, is liable to the employer for the amount thereof. (*Post, pp.* 373, 374.)

Acts cited and construed: Acts 1899, ch. 94, sec. 23.

See citations under the preceding headnote.

6. **SAME. Same. Same. Bank's liability to payee for paying checks upon forged or unauthorized indorsements is not affected by the liability of other banks therefor.**

The liability of a bank to an employer for paying a check drawn in his favor by passing the same to the credit of the personal account of the employee, upon the indorsement of the employee without actual or apparent authority, and permitting him to check out the same for his personal use, is not affected by the fact that other banks, including the drawee bank, might be held liable to the employer, by reason of their connection with the transaction. (*Post, p.* 375.)

FROM. KNOX.

Appeal from the Chancery Court of Knox County. H. L. M'CLUNG, Chancellor.

SHIELDS, CATES & MOUNTCASTLE, for complainant.

CORNICK, WRIGHT & FRANTZ, for defendant.

MR. JUSTICE GREEN delivered the opinion of the Court.

This suit was brought by the Knoxville Water Company against the East Tennessee National Bank concerning the matters and things hereinafter set out, and from a decree in favor of the defendant the complainant has appealed to this court.

The Knoxville Water Company is a Tennessee corporation engaged in the business of furnishing water to the inhabitants of Knoxville and vicinity. It formerly had in its employ I. A. Martin, who was called the "cashier" of the company, and whose duties will be more fully noticed further in the opinion. From September 26, 1906, to February 26, 1908, Martin deposited to his individual credit in defendant bank five checks, drawn by customers of the water company in its favor, aggregating $2392.54. These checks were drawn on Knoxville banks, payable to the order of the Knoxville Water Company, were indorsed by Martin, "Knoxville Water Co., by I. A. Martin, Cashier," also indorsed by him individually, "I. A. Martin," were collected and passed to Martin's personal account by the bank, and the proceeds checked out by Martin for private purposes, presumably. He afterwards proved a large defaulter.

It is insisted for the complainant that Martin was without authority to indorse for, or in the name of, the Knoxville Water Company, and, further, that these checks showed upon their face that they were the property of the water company, and that the bank, by taking such checks as these and allowing Martin to check

out the proceeds for his own use, became liable to the water company, as one assisting in the misappropriation of trust funds with knowledge of their character. Both propositions are controverted by the bank, and it denies that Martin was without authority to indorse the checks of the water company, and further denies that it was under obligations to look after the disposition of the proceeds of these checks by Martin.

As to Martin's authority in the premises we find these facts: He was employed by the water company to render bills against the company's customers, collect them, and deposit these collections in the Third National Bank of Knoxville. He was also required to pay the local bills of the company, pay roll, office expenses, interest on the company's bonds, and other such claims. He was not given authority to indorse the company's name, by himself, even on the checks collected by him. His duties in this connection were to indorse these checks for the company in the name of "Elbert Wheeler, Treasurer," by a rubber stamp furnished him for that purpose, and to deposit these checks, so indorsed, to the credit of the "Knoxville Water Company, Elbert Wheeler, Treasurer," daily, in the Third National Bank. Martin had no authority whatever over this account, to check against it, or otherwise. He was furnished money by the treasurer for the expenses above referred to; this money being kept in a separate account at the same bank. This account, over which Martin did have control, was not in the name of the "Knoxville Water Company" at all; but the funds were deposited to the

credit of "I. A. Martin, Cashier." He was therefore prevented from using the company's name even in this connection. The company took the extra precaution to place this expense account in Martin's own name, not in its own. So that, in disbursing and checking out the company's funds for legitimate purposes, he was required to do so in his own name as cashier, and the company gave him no authority or excuse for using its name in any banking transaction. It would seem that this company took every possible step to refute the idea that Martin had authority to use its name in any banking business at all.

We accordingly reach the conclusion that Martin was without express authority to indorse in the company's name the checks, which are the basis of this suit, or any other checks, but have yet to determine whether such indorsement was within the apparent scope of his authority, as "cashier" of appellant.

In the first place, it should be said that no such office, as that of cashier was provided for, either in the charter or by-laws of this water company. Martin was therefore not an officer of the corporation at all, but merely an employee, designated as "Cashier." He was not the managing agent of the company; those duties being performed by an official known as "resident manager."

There is a marked distinction between the cashier of a bank and the cashier of any other corporation. By law and by usage of years, the cashier of a bank is regarded

as an executive officer by whom the whole moneyed operations of the institution are to be conducted. Of a bank cashier, Mr. Thompson says:

"The cashier of an incorporated bank is regarded in law as its chief executive officer. He is in no sense the agent of the board of directors. He is a statutory officer, not of the directory, but of the corporation. The directors make the contracts of the corporation, and he carries them into execution. He is an independent officer of a corporation, in a sense analogous to that in which the governor of a State, or the mayor of a city, is an independent officer of the law. As they are not the servants of the legislative body of the State, nor municipality, neither is he in a legal sense the servant of the directors, who constitute the legislative body of the banking corporation. Though chosen by the directors, he is as much the statutory agent of the corporation as the directors themselves. Therefore the acts and doings of a cashier, carrying into execution a lawful contract entered into by the bank—that is, by its board of directors—are the acts and doings of the bank itself, for which the corporation is responsible to all parties aggrieved by them." 4 Thomp. Corp., sec. 4740.

No such power and authority as this possessed by the cashier of a bank can reasonably be ascribed to the cashier of other institutions, in the absence of provision to such effect in the charter or by-laws of these corporations. Such authority cannot be attributed to the cashier of corporations, other than banks, from usage, for usage is to the contrary. The use of the word "cash-

ier." to designate employees of various enterprises has become very common. Hotels, stores, theaters, insurance offices, restaurants, and many other concerns have employees they call "cashiers," who receive and take in money due from customers. Such places are scarcely ever occupied by those with real authority over the business. They are frequently filled by young women; the duties being chiefly mechanical, rather than administrative. At most, in corporations, other than banks, the cashier is nothing generally beyond a head bookkeeper. He was certainly nothing more in this case.

So we think that when a corporation, other than a bank, designates one of its office men as "cashier," it does not thereby in any sense hold out such an employee to the world as a managing agent, with authority to indorse and dispose of its commercial paper. Such dealings are not within the apparent scope of the authority of such employees. It may be added that there is no satisfactory proof of any contrary custom or usage in Knoxville. The testimony on this point offered by defendant manifestly relates to cashiers of banks, in so far as it is pertinent.

The distinction we have here made is also taken in a late and authoritative work on Corporations, as follows:

"A cashier of a corporation other than a bank has no authority to bind it by contracts, unless such power is given by the charter, by-laws, or usage, or by the directors." *Clark & Marshall on Corporations*, vol. 3, sec.

705, citing *Delta Lumber Co.* v. *Williams,* 73 Mich., 86,
40 N. W., 940.

The case cited, *Delta Lumber Co.* v. *Williams,* supra,
it should be observed, does not exactly decide the point
in issue here; it not being necessary. The court there
held that the cashier of a lumber company had exceeded
the authority that, under the circumstances named,
would have been possessed by a bank cashier; but the
difference between the authority of a bank cashier and
a cashier of another corporation is distinctly recognized.

. Having concluded that Martin was without either
actual or apparent authority to indorse these checks,
it is useless to further pursue this branch of the case.
On the question of apparent authority, however, we
wish to say that these deposits by Martin seem to us
irregular and unusual, and they should have aroused
the suspicion of the bank when made. For an employee
to bring his employer's bills receivable to a bank with
which the latter has no business relations, for the em-
ployee there to indorse them in his employer's name,
and for the employee to ask that such bills or checks
be placed to his individual credit—such transactions
seem to us to be so out of line with, and contrary to, the
usual course of business, that they should have served
to put the bank on sharp inqury. We think this is
true, whether the employee so offering such checks be
president, manager, treasurer, or any other officer or
agent of an employing corporation. And we think a
bank, which under these circumstances accepts such a
deposit to the individual credit of an employee. sub-

ject to his individual·check and disposition in this way, has little ground upon which to urge that such an employee was thus acting within the apparent scope of his authority.

Under the negotiable instruments law, a forged signature and a signature made without authority are put on the same plane in so far as passing title to paper is concerned. Both are wholly inoperative, and neither confer any right to retain the instrument, nor any consequent right to retain the proceeds of the instrument, if collected.

Chapter 94, sec. 23, of the Acts of 1899 (the negotiable instruments act), provides: "Where a signature is forged or made without authority of the person whose signature it purports to be, it is wholly inoperative, and no right to retain the instrument, or to give a discharge therefor, or to enforce payment thereof against any party thereto, can be acquired through or under such signature, unless the party against whom it is sought to enforce such right is precluded from setting up the forgery or want of authority."

In the determination of this case, Martin's indorsement of these checks must be treated just as a forged indorsement, although it is not technically so in the sense of the criminal law.

It is the settled law in Tennessee that a bank, receiving and collecting a check upon a forged indorsement of the payee's name, is liable to the payee for its proceeds, although the bank has fully paid over and ac-

counted for same to the forger, without knowledge or suspicion of the forgery.

See *Farmer* v. *Bank,* 100 Tenn., 187, 47 S. W., 234; *Pickle* v. *Muse,* 88 Tenn., 381, 12 S. W., 919, 7 L. R. A., 93, 17 Am. St. Rep., 900; *Chism* v. *Bank,* 96 Tenn., 641, 36 S. W., 387, 32 L. R. A., 778, 54 Am. St. Rep., 863.

The authorities are reviewed in the case of *Farmer* v. *Bank,* 100 Tenn., 187, 47 S. W., 234, and it is there said that "one coming into possession of such paper, either unindorsed, or with a forged indorsement of the payee's name, could not successfully resist the title of the true owner, or, if it has been converted into money, a demand for its proceeds." The bank in that case received a check from a third party with the forged indorsement of the payee's name. The check was on a bank in a different town, and the receiving bank collected it and placed it to the forger's credit, permitting him to check out the proceeds. The bank was held liable, upon the suit against it of the payee, for the amount of the check.

Under the authority of this case, and in view of what we have previously said, we think the defendant bank here is equally liable to the water company for the amount of the checks concerning which this suit is brought.

The very able argument made for defendant bank is based on the assumption that Martin had authority to indorse these checks. Having rejected the premises upon which this argument is builded, we need not, of course, follow it in this opinion, or discuss it further.

Water Co. v. Bank.

The fact that, under the proof in this record, other banks in Knoxville, including the drawee banks of these checks, might have been held liable to the water company, by reason of their connection with these transactions, cannot be considered here. The company had a right to sue and to recover from the East Tennessee National Bank on account of these checks. The cross equities, if any, among the banks, cannot be adjusted in this suit.

Other defenses raised in the pleadings have been fully considered by the court and deemed to be unavailing to the defendant bank. Inasmuch as such matters were not pressed either in argument or brief, they will not be discussed in this opinion.

It results that the decree of the chancellor will be reversed, and a decree entered here in favor of the Knoxville Water Company against the East Tennessee National Bank for $2392.54, with interest from the date of the filing of this bill, and the costs of the cause.