LITCHFIELD SHUTTLE CO. *v.* CUMBERLAND VALLEY NAT. BANK.

*(Nashville. December Term, 1915.)*

**BANKS AND BANKING.** Payment of checks. Forged endorsements.

Where the manager of a corporation's branch business, with authority to draw checks in its name on the bank account which it kept for such branch business, and issue them, drew checks thereon, payable to persons with whom it had business dealings, forged their indorsements, and then procured the money thereon, either directly from the bank, or by negotiating them to others, the bank is not liable to the corporation for the money so paid out, it being misled by the fault of the drawer; and this not only independently of, but under, Negotiable Instruments Act (Laws 1899, ch. 94), by sections 65 of which the manager, when negotiating them, warranted that they were genuine and in all respects what they purported to be, so that by section 23 he and his principal were precluded from setting up the forgery.

Acts cited and construed:  Acts 1899, ch. 94.

Cases cited and approved:  Pickle v. Muse, 88 Tenn., 384;  Jackson v. Bank, 92 Tenn., 159;  Chism-Churchill & Co. v. Bank, 96 Tenn., 644;  Farmer v. Bank, 100 Tenn., 187;  Water Co. v. Bank, 123 Tenn., 364;  Coggill v. Am. Ex. Bank, 1 N. Y. 113;  Meacher v. Fort, 3 Hill (S. C.), 227;  Water Co. v. Bank, 123 Tenn., 364.

Case cited and distinguished:  Hortsman v. Henshaw, 11 How., 177

---

FROM DAVIDSON

---

Appeal from the Chancery Court of Davidson County.—JAS. B. NEWMAN, Chancellor.

F. M. BASS, for appellant.

JORDAN STOKES, SR., for appellee.

MR. JUSTICE GREEN delivered the opinion of the Court.

This bill was filed by the Litchfield Shuttle Company to recover from the Cumberland Valley National Bank the amount of several checks issued by the local superintendent of complainant and alleged to have been paid by the defendant bank on forged indorsements. There was a decree for the complainant below, and the defendant has appealed to this court.

Complainant company, a Massachusetts corporation, owned a mill in Nashville, known as the "Star Block Mills." One Jasper Hooper was superintendent or general manager of this mill. The mill here purchased suitable lumber which was converted into blocks of proper size, and these blocks were shipped to the complainant company in Massachusetts, where they were in turn converted into shuttles.

A bank account in the name of the Star Block Mills was kept by the complainant at Nashville with the defendant bank. The superintendent, Hooper, had authority to draw checks on this account in the name of the Star Block Mills for the expenses of the local mill and to purchase lumber. So far as the record shows, Hooper was the only person who did have authority to draw checks on this account, and his authority in this

respect was not restricted by any specific instructions to the bank.

An investigation of the local concern by the complainant company disclosed that Hooper was short several thousand dollars. Proof introduced by complainant tended to show that Hooper would draw checks on the defendant bank in the name of the Star Block Mills payable to various persons with whom the mills had business dealings. He would then forge the name of the payee and procure the money on the check, directly, from the bank, or else by negotiating the check with others.

One defense interposed by the bank is in these words:

"This defendant states that it never at any time paid any check drawn against said account of the Star Block Mills, except pursuant to the terms of said check or pursuant to the direction of those who had authority to represent the said Star Block Mills and direct the payment of the funds to its credit with said defendant."

We think this defense is well made.

As before stated, there was no limitation, so far as the bank was advised, of Hooper's authority to check on the Star Block Mills' account. He was, in the language of the bill, the general manager or superintendent of the Star Block Mills, and he was, so far as it appears, the only person authorized to draw on this account. Therefore Hooper's act in drawing upon the account was the act of the complainant corporation, and in the absence of special circumstances, which do

not exist here, the complainant cannot, as against the bank, be heard to question Hooper's authority to issue these checks.

So far as the bank was concerned, Hooper had authority to draw the checks in controversy and had authority to put them in circulation. Complainant's auditor testified that the indorsements on the checks in suit were in the handwriting of Hooper. Therefore, when the checks were issued by Hooper, who had authority to draw and issue them, they already bore the indorsements said to have been forged.

The rule announced in *Pickle* v. *Muse,* 88 Tenn., 384, 12 S. W., 919, 7 L. R. A., 93, 17 Am. St. Rep., 900, *Jackson* v. *Bank,* 92 Tenn., 159, 20 S. W., 802, 18 L. R. A., 663, 36 Am. St. Rep., 81, *Chism-Churchill & Co.* v. *Bank,* 96 Tenn., 644, 36 S. W., 387, 32 L. R. A., 778, 54 Am. St. Rep., 863, *Farmer* v. *Bank,* 100 Tenn., 187, 47 S. W., 234, and *Water Company* v. *Bank,* 123 Tenn., 364, 131 S. W., 447, to the effect that the drawee bank must judge of the identity of the payee and the genuineness of his indorsement at its peril, is subject to this qualification: If the bank is misled by the negligence or other fault of the drawer, and thus induced to pay the wrong person, then it can, as against the drawer, rely on its innocent mistake. 3 R. C. L., p. 594.

The bank may charge its customer with payments made on forged indorsements if "there be circumstances which amount to a direction from the customer to the banker to pay without reference to the genuineness of the indorsement, or circumstances equivalent to a

subsequent admission by the customer of the genuineness of the indorsement, in reliance upon which the banker has been induced to so alter his position as to preclude the customer from showing the indorsement to be forged.'' Morse on Banks and Banking, sec. 474.

These checks appear to have been cashed or to have been put in circulation by Hooper himself, complainant's superintendent. They bore the forged indorsements at the time they were negotiated by Hooper, and in view of this conduct of complainant's representative, within the apparent scope of his authority, we think complainant is not entitled to relief against the bank.

The same result would be reached by an application of the technical rules of the law merchant, which are now embodied in the Negotiable Instruments Act (chapter 94 of the Acts of 1899).

Section 23 of the statute provides:

''Where a signature is forged or made without the authority of the person whose signature it purports to be, it is wholly inoperative, and no right to retain the instrument, or to give a discharge therefor, or to enforce payment . . . against any party thereto, can be acquired through or under such signature, unless the party, against whom it is sought to enforce such right, is precluded from setting up the forgery or want of authority.''

Section 65 of the statute provides:

''Every person negotiating an instrument by delivery or by a qualified indorsement, warrants:

"(1) That the instrument is genuine and in all respects what it purports to be;

"(2) That he has a good title to it;

"(3) That all prior parties had capacity to contract;

"(4) That he has no knowledge of any fact which would impair the validity of the instrument, or render it valueless. But when the negotiation is by delivery only, the warranty extends in favor of no holder other than the immediate transferee."

When Hooper negotiated these checks, under the provisions of section 65, he warranted that they were genuine and in all respects what they purported to be. Under section 23, in view of the statements heretofore made, Hooper and the complainant are precluded from setting up the forgery of the indorsements.

In discussing the rights of the parties where a bill of exchange was put in circulation containing the forged indorsement of the payees, the supreme court of the United States said:

"But in this case the bill was put in circulation by the drawers, with the names of the payees indorsed upon it. And by so doing they must be understood as affirming that the indorsement is in the handwriting of the payees, or written by their authority. And if the drawee had dishonored the bill, the indorser would undoubtedly have been entitled to recover from the drawer. The drawers must be equally liable to the acceptor who paid the bill. For, having admitted the handwriting of the payees, and precluded themselves from disputing it, the bill was paid by the acceptor to the

persons authorized to receive the money, according to the drawer's own order." *Hortsman* v. *Henshaw,* 11 How., 177, 13 L. Ed., 653.

"Whatever signature or indorsement is upon an instrument when issued by the drawer or maker will be deemed good against him in the hands of a *bona fide* holder. His delivery of the paper affirms its correctness, and if the name be forged the amount paid on the bill may be recovered by the drawee from the drawer." 2 Morse on Banks and Banking, sec. 477.

To the same effect, see *Coggill* v. *American Exchange Bank,* 1 N. Y., 113, 49 Am. Dec., 310; *Meacher* v. *Fort,* 3 Hill (S. C.), 227, 30 Am. Dec., 364; Daniel on Negotiable Instruments, sec. 1356.

The sections of the negotiable instruments statute quoted were no doubt rested, in part at least, on the cases just cited, and these cases illustrate the application of the rules announced therein and in the statute.

When the complainant by its general manager issued these checks bearing the indorsement of the several payees, it thereby admitted the genuineness of the signatures, and it is now precluded from asserting to the contrary. When the bank paid these checks thus vouched for by the duly authorized agent of the complainant, such payment was according to the drawer's own order or pursuant to the direction of one who had authority to represent the drawer.

This case is readily distinguishable from *Water Company* v. *Bank,* 123 Tenn., 364, 131 S. W., 447. In

the latter case, an agent with very limited authority, noted in the opinion, fraudulently indorsed checks payable to his principal and deposited these checks to his individual account in a bank with which his principal had no business relations. The agent then proceeded to check out the deposit so made, for his private purposes. Under this state of facts, we held the bank liable to the principal. The agent was manifestly using his principal's funds for his personal ends, and the facts were such as to put the bank on notice.

In the present case, however, Hooper was superintendent or general manager—a sort of general agent. To him had been intrusted the control of complainant's Nashville bank account. Considering the character of complainant's business and the extent of Hooper's authority, the defendant bank may very well have concluded that the checks here in controversy represented expenses of the mills paid in cash by Hooper, and that the checks were drawn and indorsed by him as vouchers.

It results that the decree of the chancellor is reversed, and the bill dismissed, at complainant's costs.