## BRUCE MITCHELL v. S. S. McCONNELL, SUPT. OF BANKS.

Western Section. December 20, 1927.

Petition for Certiorari denied by Supreme Court, February 18, 1928.

1. **Banks and banking. A cashier may bind his bank by an endorsement.**

   In transferring the commercial paper of a bank in the usual course of business the cashier may bind the bank by endorsement.

2. **Banks and banking. A bank may be bound by an accommodation endorsement of cashier.**

   While it has been considered that a cashier has authority to endorse only paper owned by the bank and that he cannot in his official capacity make an accommodation endorsement still, according to the better view, as the cashier is the person authorized to endorse paper for the bank, the bank may be liable on the endorsement of its cashier to a bona fide holder, though the endorsement of its cashier was for accommodation on paper not owned by the bank.

3. **Bills and notes. Purchaser of a note from a bank is not required to inquire whether or not it is owned by the bank.**

   A purchaser of negotiable paper in good faith before maturity is not bound when he takes it properly endorsed by the cashier to inquire whether the bank owned it when it was endorsed. An endorsement by the cashier in his own name with the affix "cashier" or its recognized abbreviation, is regarded as the endorsement of the bank, and not merely of the cashier as an individual. The power of the cashier in selling commercial paper belonging to the bank, without endorsement, to guarantee its payment has been upheld.

4. **Banks and banking. The cashier is recognized as executive officer of a bank.**

   The cashier of a bank is the executive officer through whom the whole financial operations of the bank are conducted. He receives and pays out its money; collects and pays its debts and receives and transfers its commercial securities. The cashier of a bank is ordinarily the executive officer of the bank. He is the agent through whom third persons transact their business with the bank. The bank generally holds him out to the world as having authority to act according to the general usage, practice and course of business, and all acts done by him in such usage, practice and course of business, bind the bank as to third persons who transact business with him on the faith of his official character.

5. **Banks and banking. Where directors of a bank entrust its management to the cashier they are bound by his acts.**

If the directors of a bank entrust its entire managment to the cashier, neither the bank nor its receiver can be heard to deny the authority of the cashier to do any acts which it or its directors might authorize him to do. If the directors of a bank, with authority to rediscount its notes entrust the entire management of the bank business to its cashier, and third parties at his request rediscount, a note belonging to the bank, in due course of business, without notice of want of authority, in such cashier, the bank and its directors are bound by his action and are liable on the note.

6. **Banks and banking. Usual restriction of cashier's duties not known to customer is not binding on him.**

Where the by-laws of a bank provided that the cashier could not make loans greater than $500 without the consent of the finance committee, but this by-law was not known to a customer who dealt with the cashier in the regular course of business, held the customer was not bound by the by-law.

7. **Bills and notes. There must be actual notice of infirmity of negotiable instrument.**

To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such acts that his action in taking the instrument amounted to bad faith.

8. **Bills and notes. Duties of a party to whom negotiable paper is discounted or sold before maturity.**

There is not much difficulty in stating the rule of law defining the duties and obligations of a party to whom negotiable paper is presented for discount or sale before due. He is not bound at his peril to be on the alert for circumstances which might possibly excite suspicion or wary vigilance. He does not owe to the party who puts the paper afloat the duty of active inquiry in order to avoid the imputation of bad faith. The rights of the holder are to be determined by the simple test of honesty and good faith and not by a speculative issue as to his diligence or negligence. The holder's rights can not be defeated without proof of actual notice of the defect in title or bad faith on his part, evidenced by circumstances.

9. **Bills and notes. Evidence. Evidence held to show plaintiff was holder of note in good faith.**

In an action to recover on a note where the bank denied that it was liable under its endorsement because the cashier had endorsed the same without the knowledge and consent of the finance committee of the bank, as required by its by-laws and where the evidence showed that the customer bought the note in good faith without knowing that the cashier could not make loans greater than $500 without the consent of the finance committee, held that he was a purchaser before maturity in good faith and that the bank was liable on its endorsement.

10. **Banks and banking. The receiver of a bank stands in the same position as the bank.**

In an action against the receiver of a defunct bank the receiver stands in the same position as the bank.

Appeal from Chancery Court, Madison County; Hon. Tom C. Rye, Chancellor.

Reversed.

Pearson & Hewgley, of Jackson, for appellant.

S. J. Everett and Murray & Murray, of Jackson, for appellee.

OWEN, J.  The complainant Bruce Mitchell has appealed from a decree of the chancery court dismissing his bill. The defendant S. S. McConnell at the time of the filing of the bill in this case was Superintendents of Banks of Tennessee, and by virtue of his office he was liquidating the affairs of the Peoples Savings Bank of Jackson, which bank was declared insolvent and taken over by the defendant on June 5, 1925. At the time of the failure of said bank T. B. Carroll was the cashier and actively in charge of the business of said bank. It appears that upon February 17, 1925, T. B. Carroll, acting for the Peoples Savings Bank endorsed a note executed by P. J. Phillips, Sr., Joe T. Phillips and F. H. Phillips, which note was executed to the Peoples Savings Bank on February 1, 1923, for $6225, due one year after date. On February 17, 1923, the complainant purchased said note from the bank through its cashier, T. B. Carroll. The note was not paid at maturity, but T. B. Carroll consented to the payments that were made and to an extension. It appears that the interest was paid until June 1, 1925.

The complainant filed a claim with the defendant as receiver of said bank and he was notified that his claim was disallowed. Thereupon he instituted this suit.

The defendant answered said bill admitting insolvency of said bank and his receivership thereof. He denied that P. J. Phillips and others executed the note sued on to Peoples Savings Bank or that complainant ever purchased said note from the bank; that said bank ever endorsed said note or agreed to an extension thereof.

The defendant set up as a defense the fact that the finance committee and directors of said bank declined and refused to make said loan to Phillips and allege that if T. B. Carroll endorsed such a note, as cashier, that he did so without authority against the positive instruction of the finance committee and directors of said bank, and that the bank therefore could not be bound by such endorsement.

The defendant further alleges as a defense that complainant did not buy said note but it was a private contract and agreement between complainant, the makers of said note and Carroll, the cashier of said bank, whereby complainant loaned Phillips the amount called for in said note, made his check payable to Phillips instead of the bank or Carroll as cashier, and credits on said note were paid by Phillips and not by the bank; that the bank records revealed no such loan to Phillips and that same never was made by the bank; that if the cashier of said bank endorsed said note and consented to an extension thereof said acts were without authority and contrary to his orders and instructions; that complainant knew when he accepted

said note that said bank did not hold the note or receive any benefit from it.

By amendments the defendant set up as a defense the fact that under the by-laws of said bank the cashier had no authority to make loans in excess of $500 without consent of finance committee and that his action in making this loan is not binding on the bank; that complainant was engaged in buying and selling notes and had not paid a license to engage in said business and consequently could not maintain this suit.

The case was heard on bill and answer and oral proof and the court dismissed complainant's bill. The complainant moved for a new trial, which was overruled, and an appeal was prayed and granted to this court.

The complainant has assigned three errors, but in substance they raise but one question, and that is, the court erred in dismissing complainant's bill for the reason there is no competent evidence in the case to support the holding of the court.

The uncontradicted proof shows that complainant paid full value for the note in controversy about seventeen days after its execution. He was in the banking house of the People Savings Bank when Mr. Carroll, the cashier, asked complainant if he could handle a note for about $6250, with a letter from him (Carroll) guaranteeing payment of the note. The complainant replied "no, I can't do that, but I can with the bank's endorsement" and complainant agreed to handle it for the bank for a short time. The cashier insisted that complainant handle the note for twelve months. Thereupon the complainant gave two checks, one drawn on a bank at Bethel Springs and the other on the Peoples Savings Bank. These two checks were made out by Mr. John M. Carroll, assistant cashier, and it appears that complainant signed the checks without reading them. The checks were drawn in favor of P. J. Phillips & Sons. The bank discounted the note eight per cent. Complainant testified that he did not know of anything irregular in the way in which the note was handled; that the cashier, Carroll, told him (complainant) that it was an A-1 note, but that it was an excessive line and the bank had restrictions as to how much they could carry and it would be an accommodation to the bank for complainant to take over the note. The complainant further testified that he thought the bank was in A-1 shape at the time he purchased the note and was able to take care of its obligations, and that Carroll told him the parties were in good shape and good pay, but their loans with the Peoples Savings Bank were excessive. It appears that complainant was a customer of the Peoples Savings Bank. The note executed February 1, 1923 was signed by P. J. Phillips, Sr., Joe T. Phillips and F. H. Phillips. Five credits were entered and said note, showing interest paid and note extended in each instance, and these credits were signed by

Peoples Savings Bank by T. B. Carroll, cashier, in three instances and in two instances by T. B. Carroll, cashier. On the same day that the note was executed by the three Phillips's, payable to the order of the Peoples Savings Bank, for $6225, P. H. Phillips & Sons, by F. H. Phillips, gave a check to the Security National Bank for $6237.45, which check was drawn on the Peoples Savings Bank. This check was given to the Security National Bank to pay a note that the Phillips's had executed to a Mr. Leeper in payment for certain real estate. Before the Security National Bank would surrender the note to Phillips they telephoned the Peoples Savings Bank and were assured that the check would be honored. At that time Phillips and Sons had less than five dollars to their credit in the Peoples Savings Bank.

When complainant purchased the note he gave a check on the Bethel Springs Bank for $3000 and on the Peoples Savings Bank for $2727. Both of these checks were endorsed on the back "credit account P. J. Phillips & Sons."

It appears that the negotiations as to this loan by the Peoples Savings Bank to Phillips & Sons was made by F. H. Phillips, an attorney of Henderson, Tennessee, and who in 1923 resided in Jackson, Tennessee. Mr. Phillips testified for complainant as follows:

"In February of 1923 he resided in Jackson, Tennessee, was engaged in the practice of law and was a customer of the Peoples Savings Bank; during the early part of 1923 he made application to the cashier of said bank for a loan for the purpose of obtaining money with which to pay a debt owing R. H. Leeper; that said loan was made and is evidenced by the note sued on in this cause and now the property of complainant; that on February 1, 1923, after negotiating this loan he drew a check on the account of P. J. Phillips and Son, carried with the Peoples Savings Bank, and that said check was paid by said bank on February 2, 1923; that on that date the account of P. J. Phillips and Son had only four or five dollars to its credit in addition to the proceeds of this loan; that all of his dealings were with the cashier of said bank, T. B. Carroll; that he did not know complainant, Bruce Mitchell, in the transaction, did not even know him personally and did not know that complainant held his note until a few days before it was due; that after he talked with Carroll about the loan he went to the Security National Bank to pay the Leeper debt; that when he offered the Security National Bank his check on Peoples Savings Bank the offer of the Security National Bank declined to accept his check until he had talked with cashier of Peoples Savings Bank and after talking with him accepted his check and same was paid the following day by Peoples Savings Bank out of loan made him by the bank and evidenced by this note; that he went to see Carroll several days before his debt to Leeper was due for

the purpose of arranging a loan, as he had done on previous occasions; that Carroll told him he would take it up with his finance committee and on his second trip to see Carroll he was informed he could get the money; that Mr. Carroll told him about the time the note was due the complainant had the note and that complainant told him (the witness) that he was carrying this note for the bank.''

J. W. Vanden, president of the First National Bank was president of the Peoples Savings Bank from 1915 to 1925. He testified that the by-laws of the Peoples Savings Bank provided that ''no loan in excess of $500 shall be made without the approval of the board of directors or finance committee, that the cashier shall perform all other duties incident to the office that the board of directors may require.'' This by-law was in effect in February, 1923. Mr. Vanden testified that the finance committee did not give T. B. Carroll, cashier, permission to make the loan to P. J. Phillips, Sr., J. T. Phillips and F. H. Phillips in February, 1923 for $6225, and that the bank never authorized Mr. Carroll to place the bank's endorsement on the note. It was also shown that the by-laws of the Peoples Savings Bank contained the following provision in regard to the cashier: ''He shall have authority to sign drafts, checks, certificates of deposit and receipt for moneys deliverable, to endorse notes, bills and acceptances.''

The record shows that the complainant had no notice of the by-laws of the bank and he knew nothing about the cashier not being permitted to make loans in excess of $500 except upon the approval of the board of directors or finance committee.

Mr. T. I. Taylor, the liquidating agent, acting for the Superintendent of Banks, testified in substance that he had been the agent of the Peoples Savings Bank and conducting the liquidation of said bank since June 11, 1925; that he had had several conversations with the complainant about the note sued on. Mr. Taylor testified that the complainant told him that Mr. Carroll had been to him (complainant) and said that the note in controversy had not been approved by the finance committee and he would have to find someone on the outside to take it up. This witness showed that the discount ledger contained a list of notes handled by the Peoples Savings Bank, and during the month of February, 1923 (between February 1st and 17th) he found the note for $1663.50 executed by P. J. Phillips and his sons. This note was marked in pencil ''renewal;'' that it was discounted February 12, 1923, and on that same day a note executed by the same parties for $1000 was discounted by said bank. The note for $6225 was never entered on the discount ledger. On cross-examination this witness said: ''There are some irregularities in the records, but not so awfully many. There were some accounts of individuals manipulated or tampered with by someone on the inside of the bank and it has been hard to run down the various funds which have been manipulated. The books of the bank, as

shown by this witness, show that on February 17, 1923, the personal account of P. J. Phillips and Son received credit for $5727, which was the amount of the two checks given to Mr. Carroll by the complainant for the note in controversy. This witness said he did not remember every word just exactly as Mr. Mitchell had stated them to him, because he had quite a number of conversations with Mitchell regarding the note in controversy.

This is the substance of the evidence upon which the Chancellor dismissed complainant's bill.

Is there any evidence to support the finding of the Chancellor; or, taking the facts in their most favorable light, is the bank liable for its endorsement upon the note, which endorsement was made by its cashier, T. B. Carroll?

On the defense raised, that Mitchell was engaged in buying notes, said defense doesn't seem to be insisted on here. The statute of 1923, was passed April 1, 1923. This transaction took place on the 17th of February, 1923, prior to the passage of said revenue act, and Mitchell testified this is the only note that he purchased, it being a single transaction; hence the revenue law prior to 1923 would not bar the complainant.

We find as a fact from the undisputed proof that the Peoples Savings Bank advanced Phillips and Sons on February 2, 1923, $6237.45, represented by the check that Phillips and Sons drew upon the Peoples Savings Bank, payable to the order of the Security National Bank, which check was dated February 1, 1923, and paid by the Peoples Savings Bank February 2, 1923. This check was given to liquidate the note of Phillips and Sons executed to Leeper for land. At the time that the Peoples Savings Bank cashed this check given to the Security National Bank, Phillips and Sons did not have more than four or five dollars to their credit in the Peoples Savings Bank; and on the day Phillips and Sons drew the check on the Peoples Savings Bank in favor of the Security National Bank they executed a note payable to the Peoples Savings Bank for $6225 due twelve months after date, which note is the one in controversy. It appears that this check to the Security National Bank was not charged to Phillips and Sons account. Just how it was carried by the Peoples Savings Bank does not appear, but in all probability was carried as a cash item until February 17, 1923, when it was discounted to complainant. It appears that at the time this check was given to the Security National Bank Phillips and Sons were further indebted to the Peoples Savings Bank, and on February 12, 1923, Phillips and Sons renewed the notes to the Peoples Savings Bank amounting to $1663.50, and $1000.

"In transferring the commercial paper of the bank in the usual course of business the cashier may bind the bank by an endorsement. While it has been considered that a cashier has authority to indorse

only paper owned by the bank and that he cannot in his official capacity make an accommodation endorsement, still, according to the better view, as the cashier is the person authorized to indorse paper for the bank, the bank may be liable on the endorsement of its cashier to a bona fide holder, though the endorsement by the cashier was for accommodation on paper not owned by the bank. According to this view a purchaser of such paper in good faith before maturity is not bound, when he takes it thus properly indorsed, to inquire whether the bank owned it when it was indorsed, and therefore it is immaterial that he asked information of the cashier, at a place other than the bank, whether the indorsement was that of the bank and received the answer that it was. An indorsement by the cashier in his own name with the affix "cashier," or its recognized abbreviation, is regarded as the indorsement of the bank, and not merely of the cashier as an individual. The power of the cashier in selling commercial paper belonging to the bank, without indorsement, to guarantee its payment has been upheld. R. C. L., Vol. 3, sec. 82, p. 453.

The cashier of a bank is the executive officer through whom the whole financial operations of the bank are conducted. He receives and pays out its moneys; collects and pays its debts and receives and transfers its commercial securities. The cashier of a bank is ordinarily the executive officer of the bank. He is the agent through whom third persons transact their business with the bank. The bank generally holds him out to the world as having authority to act according to the general usage, practice and course of business, and all acts done by him in such usage, practice and course of business, bind the bank as to third persons who transact business with him on the faith of his official character. Corpus Juris, Vol. 11, pp. 22-23.

There is a marked distinction between the cashier of a bank and the cashier of any other corporation. By law and by usage of years, the cashier of a bank is regarded as an executive officer by whom the whole moneyed operations of the institution are to be conducted. Of a bank cashier, Mr. Thompson says: "The cashier of an incorporated bank is regarded in law as its chief executive officer. He is in no sense the agent of the board of directors . . . He is an independent officer of a corporation, in a sense analogous to that in which the governor of a State, or the mayor of a city, is an independent officer of the law" . . . Water Co. v. Bank, 123 Tenn., 370, 131 S. W. 447, 4 Thomp. Corp. sec. 4740.

If the directors of a bank intrust its entire management to the cashier, neither the bank nor its receiver can be heard to deny the authority of the cashier to do any acts which it or its directors might authorize him to do. If the directors of a bank, with authority to rediscount its notes intrust the entire management of the bank business to its cashier, and third parties at his request rediscount a note

belonging to the bank, in due course of business, without notice of want of authority, in such cashier, the bank and its directors are bound by his action and are liable on the note. Davenport v. Stone (Mich.), 53 Am. St. Rep., 467.

We are of opinion that complainant is not barred by reason of the restrictions as to the amount of loans the cashier could make.

If any bank chooses to depart from this general course of business, it is certainly at liberty to do so, but in such case it is incumbent on the bank to show that it has interposed a restriction and that such restriction is known to those with whom it is in the habit of doing business. Wild v. Bank, 3 Mason, 505 Fed. Cas.

The cashier of a bank is its chief executive officer and as such is held out by the institution as having authority to act in accordance with the usage and practice obtaining in the conduct of business by banking institutions; and, so acting, he will bind the bank in favor of third persons who possess no knowledge to the contrary, or as to limitations on his power. Bank v. Bank, 132 Tenn., 156; 177 S. W., 74.

Prima facie, from the very nature of the cashier's office, and the objects and purposes of the bank, he must be deemed to have authority to transfer and endorse securities held by the bank, for its use in its behalf; and if any restrictions have been placed on his authority it is incumbent on the bank to show that it has interposed such a restriction and that such restriction is known to those with whom it is in the habit of doing business. Northern Bank of Kentucky v. Johnson, 45 Tenn., 92.

The next proposition is whether or not complainant is barred by reason of any imperfections or irregularities in said transaction, on the ground that Carroll, the cashier, told Mitchell that he (Carroll) was criticised by his financial committee for making this loan, and it was an excessive loan, to Phillips and Sons. · In effect the loan had been made by the bank, because the proof establishes the fact that before Mitchell bought the note from Carroll the bank had permitted Phillips and Son to overdraw to the extent of $6237.45. By rediscounting the note to the complainant the bank did not increase its liabilities in regard to this loan. At the time of this transaction the Peoples Savings Bank was a going institution. It did not meet with the reverses which caused the receivership for more than two years after this transaction.

To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith. Shan. Code, sec. 3516-a-64.

We find no bad faith on the part of complainant. It appears that he was a director of a bank at Bethel Springs for a number of years

prior to this transaction, and since this transaction he has become the president of the Security National Bank of Jackson, Tennessee, and as a business man and banker we cannot presume that he would pay out nearly $6000 for a note that was questionable, or one in which he had been informed there was an infirmity or a defect, or act with bad faith in the transaction. It appears that the complainant knew T. B. Carroll, and no doubt he had the utmost confidence in Mr. Carroll, as the directors and other officers of the Peoples Savings Bank likewise had.

There is not much difficulty in stating the rule of law defining the duties and obligations of a party to whom negotiable paper is presented for discount or sale before due. He is not bound at his peril to be on the alert for circumstances which might possibly excite suspicion or wary vigilance. He does not owe to the party who puts the paper afloat the duty of active inquiry in order to avoid the imputation of bad faith. The rights of the holder are to be determined by the simple test of honesty and good faith and not by a speculative issue as to his diligence or negligence. The holder's rights cannot be defeated without proof of actual notice of the defect in title or bad faith on his part, evidenced by circumstances. Though he may have been negligent in taking the paper and omitted precautions which a prudent man would have taken, nevertheless, unless he has acted in mala fide, his title, according to settled doctrine, will prevail. Bank v. Butler, 113 Tenn. p. 574; 83 S. W., p. 655; Corinth Bank & Trust Co. v. Security National Bank, 148 Tenn., p. 148; 252 S. W., 1001.

It results that we find no evidence showing that complainant acted in bad faith, or that he had any knowledge of any defects or irregularity in said note.

Suppose that Mitchell had gone to the Peoples Savings Bank and said "I have three notes on Phillips and Sons, it is more credit than I should have extended them; I want you to take one of the notes for $6225.00, and I will endorse it. I should not have loaned this much money, but they are good," and he had endorsed the note for $6225 executed by Phillips and Sons and the bank had discounted the note at eight per cent, and that when the note fell due Phillips and Sons did not pay same; could it be said that Mitchell would not be liable upon his endorsement because he had told the bank that he had made an excessive loan, and had probably criticised himself for making it?

The defendant as receiver in this lawsuit stands no higher than if the Peoples Savings Bank was now defending this endorsement. A receiver takes the claims in favor of the estate subject to all of the equities between the parties. It is the well-settled general rule that against a demand of the receiver the debtor is entitled to set-off a claim in his own favor existing at the time when the receiver's title takes effect. R. C. L., Vol. 23, p. 57.

In the instant case we are of opinion that the bank is not entitled to escape the responsibility of its endorsement placed on this note by its cashier who was the chief executive officer of the bank; who had the confidence of the bank officials, the bank directors, the bank's depositors, the customers of the bank and the general public.

It results that the assignment of error is sustained and the judgment of the lower court is reversed and a decree will be entered allowing the complainant's claim against the receiver and permitting him to participate in the distribution of the assets of the bank as a creditor of said Peoples Savings Bank.

The receiver will pay the costs of this proceeding out of the funds in his hands as receiver of said bank.

Heiskell and Senter, JJ., concur.